## THE UTAH COMMERCIAL AND SAVINGS BANK, RESPONDENT, v. ISAAC TRUMBO, APPELLANT.

1. *Judgment by Default—Notice to Set Aside—Sufficiency of.*

Where the notice of a motion to set aside a judgment by default shows that the motion was made on affidavits and pleadings and by affidavit it appears that the entry of judgment by default was a surprise to the defendant, against whom the judgment was rendered, and that the application to set aside was based on mistake and excusable neglect, the motion itself not appearing in the record, and no objection as to its being defective having been made in the court below, the motion will be held sufficient by the appellate court.

2. *Judgment by Default—When will be Set Aside.*

Where a judgment by default has been entered, and within proper time a good defense to the action in which the judgment was rendered is made to appear, and it is shown that the

default was entered through excusable neglect or mistake, the default will be vacated, and the judgment set aside.

3. *Id.—Court—Legal Discretion—Abuse of.*
    Ordinarily, the setting aside of a judgment by default rests within the sound legal discretion of the court, and the appellate court will not interfere, but where it is made clearly to appear that there was such an abuse of discretion, through inadvertence or otherwise, as to render the action erroneous and unlawful, the appellate court will control such discretion, and set aside the illegal action; and the power to do so is recognized by section 3005, Comp. Laws.

4. *Id.—Application—Doubt as to—Resolved in Favor of.*
    Where the circumstances which led to the default are such as to cause the court to hesitate, it is better to resolve the doubt in favor of the application to set aside.

(No. 939.   Decided June 30, 1898.)

Appeal from district court, Third district; A. N. Cherry, *Judge.*

Action by the Utah Commercial & Savings Bank against Isaac Trumbo. A judgment by default was entered, and a motion to set it aside denied. Defendant appeals. *Reversed.*

*Powers, Straup & Lippman,* for appellant.

*C. W. Morse, Moyle, Zane & Costigan,* for respondent.

This action was brought to recover a certain sum of money alleged to be due on a promissory note. The attorneys for the defendant having previously withdrawn from the case, and no answer having been filed, nor any one appearing for him when time to answer expired, judgment was entered against him in the sum of $3,237.74 and $100 attorney's fee and costs. Afterwards a motion was

made to set aside the default, and permit the defendant to file an answer and cross complaint. This motion was denied. In the complaint it was alleged, substantially, that on July 6, 1896, the defendant executed to the plaintiff bank his promissory note for $4,000, to bear interest at the rate of 10 per cent per annum until paid; that to secure its payment, the defendant delivered and pledged to the bank a certain note and mortgage, executed by William C. Jennings and Isaac Jennings, and "by the terms of said note" authorized the bank, if the same should not be paid at maturity thereof, to sell the collateral "at public or private sale," and apply the proceeds to the payment of said note; that the note was not paid when due; that then the bank, in pursuance of the authority conferred by the terms of the note, "after having given due notice to the defendant of the time and place of sale, sold said collaterals on the 28th day of January, 1897, and realized from such sale the sum of $1,000, which sum was credited upon said note;" and that in addition to the said $1,000 there was paid on the note $45.39, and the interest to January 25, 1897, leaving "due and unpaid thereon" $2,954.61 principal and $196.96 interest. Judgment is prayed for accordingly. This complaint was filed on September 25, 1897, and summons issued on the same day, and service made two days later by leaving the papers with defendant's wife at his residence. She notified him, and he directed her to employ, as attorneys to defend the action, Messrs. Brown & Henderson. They thereafter appearing specially for the purpose, moved to quash and dismiss the service of summons, which motion was overruled November 3, 1897, and the defendant given ten days to answer. This action of the court is also assigned as error. On November 10 his attorneys demurred generally and specially to the complaint. On November 12 his at-

torneys wrote defendant, directing the letter to San Francisco, Cal., informing him what had been done in the case, but it appears that the defendant, through absence from the city, failed to receive the letter. Not receiving a reply, his attorneys again wrote him on December 2, saying, "We did not hear from you in reference to your case, and unless we do by return mail we shall withdraw our appearance." This letter was also addressed to San Francisco, and on December 7 the defendant wired his attorneys from Ogleby, Cal., as follows: "The only letter I have received is December 2. See Powers." On December 11 his attorneys again wrote him, stating what they had done, and saying, "If you desire us to attend to that matter, you must send us $100 and that must be done by return mail." This letter w as also directed to San Francisco, but it appears that the defendant had gone to his mine, in the southern part of California, away from railroad and mail facilities, and did not return to San Francisco until about December 20, and that he never received the letter. On December 29, 1897, his attorneys, Messrs. Brown & Henderson, withdrew from the case. Thereafter the demurrer was overruled, and the defendant given five days to answer; and on January 12, 1898, no answer having been filed, judgment was entered against him by default in the sum of $3,237.74 and $100 attorney's fee and costs. It appears from the record that the defendant had no notice of the withdrawal of his attorneys, nor of the overruling of the demurrer, nor of the entering of judgment against him, until after the judgment had been rendered; and that during that time he was also absent from San Francisco. Concerning the withdrawal of Messrs. Brown & Henderson from the case, the witness Brown testified that neither he nor his firm notified defendant that they "had withdrawn from the case at the

time the notice of withdrawal was filed, or at any other time." Immediately upon learning of the judgment by default, the defendant telegraphed another attorney, O. W. Powers, to appear and obtain an order vacating the judgment, and permitting him to plead to the merits. Thereupon a motion was made to set aside the default, vacate the judgment, and permit the defendant to file an answer and cross complaint in the cause, copies of which, with notice of the motion, specifying that the time for hearing would be January 31, 1898, and affidavits in support of the motion, were properly served. The motion and application to be permitted to plead to the merits were denied on March 5, 1898. From the affidavits filed in support of the motion it appears that during all of these proceedings the defendant was continuously absent from the state of Utah, and attending to business interests in the state of California. The defendant, in his affidavit, stated that he had been informed, and verily believed, that his attorneys had entered his appearance in the action, and believed that they had filed the proper pleadings to protect his rights; and that he had no notice of their withdrawal from the case, or of the entry of judgment by default, until after the judgment had been taken against him. It further appears by affidavit that when he learned of the judgment he telegraphed his attorney, O. W. Powers, on January 15, 1898, from San Francisco, as follows: "Haven't you been attending to that bank case? Reports here that judgment went by default. Attend to it at once." It appears he had previously asked him to assist in the case when it should come to trial. It is shown by affidavit that the judgment was a surprise to the defendant; that his application to vacate it was based upon the mistake and excusable neglect of the defendant; that after the defendant had fully and fairly

stated the facts to his attorney, he was advised by him that he had a good and meritorious defense upon the merits; and that such facts were stated in the answer tendered for filing in the cause, which answer was one of the pleadings on which his motion to vacate and set aside was based. The answer and cross complaint are verified, and the defendant in the answer admits that he executed. and delivered the $4,000 note to the plaintiff, and that he delivered to it, as collateral security, the note and mortgage executed by William C. and Isaac Jennings, but denies that, upon maturity of his note, or at any other time, the plaintiff was, by the terms thereof, or at all, authorized to sell the collateral security, at public or private sale, or in any manner set forth in the complaint, or that he had any notice of sale, or ever ratified or confirmed it; and charges the plaintiff with having received a larger sum than $1,000 when the same was sold. By way of cross complaint it was averred in the answer that the collateral security consisted of a promissory note for the sum of $15,000, secured by a mortgage, in the usual form, on valuable real estate situate in Salt Lake City, the note bearing interest at 9 per cent per annum, executed and delivered to defendant by William C. and Isaac Jennings for a good and valuable consideration, dated January 6, 1890, and payable one year after date. The mortgage was executed by the same parties, at the same time, and delivered to the defendant. The interest on this note and mortgage had been paid in full to April 3, 1895, and the last payment of interest, being a partial payment, was made on December 21, 1895. On July 6, 1896, when the defendant executed and delivered to the plaintiff the $4,000 note, there was due on the note and mortgage, delivered as collateral the sum of $15,000 principal and $1,445 interest. It is further averred that when the col-

lateral was delivered to plaintiff the defendant was the legal owner and holder thereof; that the note and mortgage were delivered as collateral security in the due course of business, with power to the plaintiff, in case of default in payment of the $4,000 note sued on, to foreclose the mortgage as provided by law, and sell the mortgaged property, and apply the proceeds in payment of the note, and pay the surplus, if any, to the defendant, but not otherwise to sell the mortgaged property, nor at all to sell the note or mortgage so deposited as collateral; and that, prior to the date of the sale of the collateral, default had been made in the payment of the note and mortgage by the makers, and defendant made demand upon plaintiff that it foreclose the mortgage, and protect and keep alive the collateral by foreclosure suit; that notwithstanding the premises, the officers of the plaintiff, who, it is averred, are by blood related to William C. and Isaac Jennings, the mortgagors, acting fraudulently, and with intent to cheat the defendant, and to prevent him from enforcing his claim for $15,000 against the mortgagors, and, acting in collusion and conspiracy with the mortgagors, unlawfully converted the collateral to its own use, and, in violation of the terms of the agreement, under which the collateral was held, and without notice to the defendant, sold and delivered the note to James Jennings, the cashier, and a director of the plaintiff, and a brother of the mortgagors, for the sum of $1,000, when the collateral and the property covered by the mortgage was worth $20,000, and that the purchaser at the time of sale was aware of the fraud, and knew that the sale was made in violation of the agreement, under which the collateral was held. Such, in substance, are the facts stated in the cross complaint. The action of the court, in denying the defendant's motion, has been assigned as error, and on

appeal a reversal is asked on the ground of gross abuse of discretion.

BARTCH, J. (after a statement of the case as above, delivered the opinion of the court):

Counsel for the appellant, among other things, insists that the court, under the facts of this case, did not exercise a sound discretion in denying the motion to set aside the judgment by default, and in refusing to permit the defendant to file his answer. Counsel for the respondent contend that the motion states no ground for setting aside the default. The motion itself does not seem to appear in the record filed in this court, and therefore we are unable to scrutinize its terms. The notice does appear, and it shows that the motion was made on certain affidavits and pleadings, and by affidavit it is shown that the entry of judgment by default was a surprise to the defendant, and that the application to set it aside was based on mistake and excusable neglect, which are statutory grounds for relief. It also appears that at the hearing of the motion all parties were properly represented. Evidence was introduced, the parties were heard, the matter submitted, taken under advisement, and finally decided, without, so far as shown by the record, any objection on the ground that the motion was defective, which ground, it seems, is urged for the first time in this court. Under the facts and circumstances disclosed by the record, this court must hold that the motion was sufficient.

Was, then, the overruling of the motion such an abuse of discretion, on the part of the court, as to render its action in the premises erroneous and prejudicial to the rights of the defendant? It is clearly shown that during all the proceedings in the suit by the bank the defendant was absent from the state on business affairs—was in the state of California, and much of the time in a remote part

of that state. Immediately upon being sued, he directed
the employment of competent attorneys, which was done,
and then, feeling assured that the proper pleadings would
be filed in his behalf and his rights protected, he con-
tinued in the pursuit of his business, and, but for the un-
fortunate circumstances of his failure to receive the let-
ters of his attorneys, written him while he was absent
from San Francisco, and his consequent failure to
answer, resulting in the withdrawal of his attorneys,
without notice to him, from the case, the judgment by
default would in all probability never have been entered,
for, doubtless, upon the overruling of the demurrer, other
steps would have been taken to save his rights. This
must be inferred from the character of the answer and
cross complaint tendered to be filed on the hearing of the
motion. It will be noticed that the complaint alleges
right in the plaintiff to sell the collateral security upon
default in the payment of the $4,000 note, while the an-
swer tendered denies such right, and, in the cross com-
plaint, sets up a distinct agreement whereby, in case of
such default, it became the duty of the plaintiff to fore-
close the mortgage, as provided by law, and out of the
proceeds of sale of the mortgaged property pay its own
claims arising out of the $4,000 note, and turn the balance
over to the defendant. This raises a material issue, and,
if true, will make a good defense. Conspiracy and col-
lusion of the bank officials with the mortgagors are also set
up with considerable detail. The defense indicated is
clearly meritorious, and, with a record replete with cir-
cumstances indicating that the purpose and intention was
to defend the action on its merits, would it be reasonable
or justifiable to infer that the defendant knowingly and
intentionally neglected his case? This, too, in the face of
the fact that immediately upon his hearing of the judg-

ment by default he telegraphed another attorney to at once take steps to secure permission to answer to the merits. If in such a case as is presented in this record, a court of justice can grant no relief, then it would seem difficult to conceive of a case where a court would be justified in granting relief from a judgment by default. Surely, it cannot be said that a person liable to be sued leaves his state at his peril, even when he has employed able counsel to care for his interests, lest perchance a judgment be taken by default which will leave him without remedy, regardless of any defense he may have. Such is not the law, and courts do not favor judgments by default. The policy of the law is that every man shall have his day in court before judgment shall be entered against him, and where a judgment by default has been entered, and within the proper time a good defense to the action in which the judgment was rendered is made to appear, and it be shown that the default was entered through excusable neglect or mistake, the default will be vacated, and the judgment set aside to permit a trial on the merits. It is true that ordinarily the setting aside of a judgment by default rests within the sound legal discretion of the court, and the appellate court will not interfere, but where, as in this case, it is made clearly to appear that there was such an abuse of discretion, through inadvertence or otherwise, as to render the action erroneous and unlawful, the appellate court will control such discretion, and set aside the illegal action. Such discretion does not confer upon the court an arbitrary power beyond that of review. It is an impartial legal discretion, which cannot be employed to the injury of any subject, but must be exercised fairly, reasonably, and in accordance with the established principles of law. The power of the court to set aside judgments by default is recognized and con-

ferred in section 3005, R. S. Utah, and should be liberally exercised, for the purpose of directing proceedings and trying causes upon their substantial merits; and where the circumstances which led to the default are such as to cause the court to hesitate, it is better to resolve the doubt in favor of the application, so that a trial may be secured on the merits.

In *Bailey* v. *Taafe*, 29 Cal. 423, it was said: "The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised ex gratia, but a legal discretion, to be exercised in conformity with the spirit of the law, and in a manner to subserve, and not to impede or defeat, the ends of substantial justice." 1 Freem. Judgm. §§ 106, 114; 3 Estee, Pl. & Prac. § 4802; *Fulweiler* v. *Mining Co.*, 83 Cal. 126; *Wolff* v. *Railway*, 89 Cal. 332; *Thomas* v. *Morris*, 8 Utah 284; *Schnitzler* v. *Bank*, (Kan. App.) 42 Pac. 496; *Buell* v. *Emerich*, 85 Cal. 116; *Johnson* v. *Eldred*, 13 Wis. 539; *Machine Co.* v. *Marchant*, 11 Utah 68; *Roland* v. *Kreyenhagen*, 18 Cal. 455; *Woodward* v. *Backus*, 20 Cal. 138.

No general rule can be laid down respecting the discretion to be exercised in setting aside or refusing to set aside a judgment by default. So it would be impossible to state what degree of negligence would justify the court in refusing relief in all such cases. Each case must necessarily depend upon its own peculiar facts and circumstances, but the discretion should always be so exercised as to promote the ends of justice. In the case at bar the facts and circumstances show that it was an unavoidable misfortune to the defendant that he did not know that no attorney was representing him in the proceedings which led to the entry of judgment against him until after the

entry had been made. We are therefore of the opinion that the court erred in refusing to vacate the default and set aside the judgment, and in refusing to permit the defendant to plead to the merits. Having reached this conclusion, we do not think it necessary to discuss the question respecting the service of summons; and the questions respecting ambiguity and uncertainty in the complaint, raised specially by demurrer, so far as they may be well taken, can be obviated by amendment. The case is reversed, and the cause remanded, with direction to the court below to set aside the default and judgment, and permit the defendant to file his answer and cross complaint, and allow either or both parties to amend their pleadings if they so desire. Costs to abide the result of the action, in the discretion of the court.

ZANE, C. J., and MINER, J., concur.