WRIGHT v. HOWE, et al.

No. 2695.   Decided June 26, 1915.   Application for Rehearing, Aug. 5, 1915 (150 Pac. 956).

1. DISMISSAL AND NONSUIT—FAILURE TO PROSECUTE.   Defendants who had the same right as the plaintiff to press the action to trial, but who permitted it to remain pending for about three years, in the absence of any showing of prejudice, could not complain of the overruling of their motion to dismiss the action for failure to prosecute.   (Page 589.)

2. APPEAL AND ERROR—HARMLESS ERROR—INSTRUCTION ON WRONG THEORY.   In an action to recover damages for the death of four horses and for injury to a fifth alleged to have resulted from defendants' sale of boiled linseed oil, instead of the raw linseed oil, called for for veterinary uses, error, if any, in an instruction given on effect of warranty on which theory the case was improperly tried was not prejudicial to defendants.   (Page 591.)

3. NEGLIGENCE—LIABILITY OF SELLER OF GOODS.   Defendants, dealers in linseed oil and other merchandise, who, on plaintiff's request for raw linseed oil to be fed to horses, and which was a wholesome medicine, delivered boiled linseed oil, which was poisonous and deleterious to them, so that they became sick and died, and one was injured so as to be worthless, were liable in damages for the tort or wrong, rather than for breach of either an express or implied warranty of quality.   (Page 592.)

4. NEGLIGENCE—LIABILITY OF SELLER OF GOODS—CONTRIBUTORY NEGLIGENCE.   In such case the plaintiff was not bound to inspect the oil, and was not negligent in failing to inspect it before administering it to his horses, as he had a right to rely and act upon the belief that the defendants had delivered raw linseed oil, as requested, unless it was clearly apparent from a mere ordinary or casual observation that such had not been done.   (Page 594.)

Appeal from District Court, Third District; Hon. *F. C. Loofbourow*, Judge.

Action by S. B. Wright against Richard Howe and Frank Howe, partners under the firm and style name of Murray Coal & Lumber Company.

Judgment for plaintiff.   Defendants appeal.

AFFIRMED.

*David W. Moffat,* for appellants.

*King & Nibley* and *Samuel Russell* for respondent.

FRICK, J.

The plaintiff sued the defendants to recover the value of four horses and damages for an injury to a fifth horse.   It is, in substance, alleged in the complaint that the death of the four horses and the injury to the fifth were caused through the wrongful acts of the defendants, as will hereinafter appear. Defendants' answer was, in effect, a general denial.

There is a preliminary question arising upon a motion of the defendants to be disposed of first.   After the case had been pending for about three years the defendants moved to dismiss the action, "for the reason that the plaintiff herein has failed and neglected to prosecute said action with reasonable diligence."   While the record is not clear what ruling the court made on the motion, yet, in view that it proceeded to trial, we shall assume the court overruled the motion, and defendants have assigned the ruling as erroneous, and now urge that the court erred in not dismissing the action.   There is nothing in that contention.   The defendants had the same right to press the action to trial that the plaintiff had, and if they were willing to permit it to remain untried, and especially in the absence of any showing of prejudice, they cannot complain.

Proceeding now to the merits:   At the trial the plaintiff, in substance, proved that in March, 1910, he was engaged in the livery business at Murray City, Utah, and at that time was the owner of four horses, which were particularly described and their value testified to; that at said time there

were also other horses kept in his livery business, one of which was owned by one Dalton, who was employed by the plaintiff in said livery business; that said horses at the time were ailing somewhat, and one Dr. Locke, a veterinary, who was consulted by the plaintiff, advised him to give the horses some raw linseed oil as a physic; that the plaintiff directed his employee, Mr. Dalton, to go to the place of business of the defendants, who were dealing in linseed oil and other merchandise, and get a gallon of raw linseed oil. Mr. Dalton went to get the oil, and, regarding that matter, he, in substance, testified:

"I took a can and went over to Mr. Howe and asked him for a gallon of raw linseed oil. * * * He went and took the can and went back to the barrel and drawed a gallon from it. Q. And you asked him for raw linseed oil? A. Yes, sir. * * * Q. And did he deliver to you the oil? A. Yes, sir. * * * Q. Did he know what you wanted when you first appeared there? A. I told him I wanted it to feed to my horses. Q. Did you say anything to Mr. Howe about Mr. Wright [the plaintiff] having sent you for the oil? A. No, sir."

The witness then took the oil he obtained from Mr. Howe, one of the defendants, to the livery barn, and he and Mr. Wright, the plaintiff, administered the same to four of the horses. Mr. Wright then took the can in which the oil was brought by the witness Dalton to defendants' place of business and got another gallon of oil. The witness and Mr. Wright then gave a quart of the oil to the fifth horse. Mr. Dalton further testified:

"Then I started to take him [the fifth horse] back, and got to the door, when I seen all the rest of them foaming at the mouth; and I called Mr. Wright and told him they were sick, and he came to see them. And he ran right for the veterinary then."

The witness also said that the horse that was given some of the oil brought by Mr. Wright also got sick. He further said:

"The bay mare died that night, and the others lingered a day or two, and then four in all died."

The four horses that died, the witness said, belonged to Mr. Wright, and the one that did not die belonged to him; that it practically became worthless, and he had assigned his claim to Mr. Wright. It was then shown that, while raw linseed oil is a wholesome medicine for horses, boiled linseed oil is poisonous and deleterious to horses and cattle. The veterinary testified that he was called to see the horses that were sick on the night in question, and that the horses were poisoned. The doctor further said that he saw boiled linseed oil in a can; that the horses were sick from having been given boiled linseed oil. The witness Dalton was recalled, and said that some of the oil that was bought from defendants was left in the can; that the veterinary saw the oil that was left in the can aforesaid, some of which had been given to the horses that became sick. After showing the value of the horses and the depreciation in the value of the horse that had not died, the plaintiff rested.

It is not necessary to set forth defendants' evidence, since we rest the decision entirely upon plaintiff's evidence.

The case was tried to a jury, who returned a verdict for the plaintiff, and the defendants appeal.

The court charged the jury as follows:

"The court instructs you that any affirmation of fact respecting the quality of goods sold, made by the seller during the negotiations for the sale, if received and relied upon by the buyer, is an express warranty by the seller as to such quality of said goods."

Exception was taken to this instruction, and the giving of it is assigned as error. We remark that the charge is not a model one in a case like the one at bar. For reasons hereinafter appearing, we do not think that the defendants were prejudiced by the charge, and hence the judgment should not be reversed upon that ground. We are clearly of the opinion that both parties, as well as the court, tried the case upon a wrong theory. All through the trial of the case in the district court, and in the respective briefs of counsel in this court, the case was tried and is presented upon the theory of either an express or implied warranty of quality. While, as pointed out by some of the courts, a case like the one at

bar may partake more or less of what are called warranties, yet the action is not one of breach of warranty. The action is in tort for a wrong committed by the seller, rather than one for a breach of contract of warranty.

Let us examine now, the real facts for a moment. The witness Dalton went to the defendants' place of business to purchase raw linseed oil to be used for a particular purpose, which he then disclosed to one of the defendants. If the defendant had sold or delivered to Mr. Dalton raw linseed oil of an inferior grade or quality, the question of **3** either an express or implied warranty might prevail. The defendant, however, did not sell or deliver raw linseed oil, but he sold and delivered something entirely different, namely, boiled linseed oil, which possessed some properties which were entirely different from the properties of raw linseed oil. The plaintiff thus requested, and supposed he was buying, one article possessing no harmful properties to animals, while the defendants sold him, not an inferior grade or quality of the article called for, but a different article possessing properties deleterious to animal life. This case falls squarely within the principle which controlled the case of *Jones* v. *George*, 61 Tex. 345, on page 349, 48 Am. Rep. 280. That was an action for a so-called breach of warranty. Mr. Justice Stayton, speaking for the Supreme Court of Texas, states the law governing such actions in the following words:

"It is not pretended that the seller warranted the article sold to be such a substance as would accomplish the purpose desired by the buyer; but it is certainly true that he sold and delivered it as and for 'paris green,' that it was for this the parties mutually contracted, and that the delivery of something else was not a compliance with the contract, it not being shown that the purchaser bought the substance delivered, taking upon himself not only the risk of quality, which is the matter to which warranty applies, but also of kind. It is evident that the buyer relied on and trusted the representation of the seller. If the article delivered had been 'paris green,' but of an inferior quality, then the question would arise, the seller knowing for what purpose it was bought, whether there was an implied warranty in the sale of such an article, for such a known purpose, that the article delivered should be of a quality necessary to accomplish the purpose which a good quality of 'paris green' would accomplish in the matter in which the buyer intended to use it. That, however, is not this case. The appellant contracted to buy, and the appellee contracted

to sell and deliver, 'paris green,' and not some other substance; but 'chrome green,' a substance not having the properties of 'paris green,' though resembling it in appearance, was delivered. In such cases, technically, no warranty arises, but there is an implied contract that the thing sold and delivered is of the kind which the parties contracted with reference to."

The authorities cited in support of the Texas case are the following: Benjamin on Sales, section 600; Pollock's Principles of Contracts, 465; Story on Contracts, 1079. See Benjamin on Sales (7th Ed.), p. 679, where the cases are collated. See, also 2 Mechem on Sales, section 1209, where the nature of such sales is discussed. As pointed out in the Texas case, if àn article is requested by the purchaser which is to be used for a particular purpose which is made known to the seller, and the latter sells and delivers an entirely different article, and the purchaser is ignorant of the nature of the article, and accepts and uses it, and thus cannot return it when he discovers that he has received an article different in character from the one ordered, and is injured and damaged by its use, he may recover all damages that are directly caused by the use of the article delivered to him. The doctrine is illustrated in the Texas case where the purchaser called for "paris green" to be used as a poison to kill certain worms which were destroying the purchaser's growing cotton crop. The seller, however, sold and delivered "chrome green," which did not possess the properties of "paris green," and hence did not kill the cotton worms, which succeeded in destroying the purchaser's cotton crop. The court accordingly held that the purchaser could recover "the value of the crop as it stood just before it was destroyed by the worms, what the cost of the compound was, and the further cost of its preparation and application to the cotton, with interest on the money thus expended." See, also, Mechem on Sales, section 1824; Benjamin on Sales (7th Ed.) 963.

But it is contended that it was plaintiff's duty to inspect, and that he was negligent in not inspecting the oil before administering the same to the horses. There is nothing in the evidence from which any negligence could be deduced. More-

over, the plaintiff, as well as Mr. Dalton, had a right to
rely and act upon the belief that the defendants had          4
delivered raw linseed oil, unless it was clearly apparent
from a mere ordinary or casual observation that such had not
been done.  As is well said by Mr. Justice Cooley in the case
of *Eaton* v. *Winnie,* 20 Mich. 166, 4 Am. Rep. 377:

> "If a party's own wrongful act has brought another into peril, he
> is not at liberty to impute the consequences of his acts to a want of
> vigilance in the injured party, when his own conduct and untruthful
> assertions have deprived the other of that quality and produced a
> false sense of security."

In the case of *French* v. *Vining,* 102 Mass. 136, 3 Am. Rep.
440, Mr. Justice Ames, speaking for the court, in referring
to circumstances somewhat like those in the case at bar, says:

> "The buyer has a right to suppose that the thing which he buys,
> under such circumstances, is what it appears to be, and such pur-
> chases are usually made with a reliance upon the supposed skill or
> actual knowledge of the vendor."

In that case the purchaser bought hay to feed a cow, upon
which hay some dry poison had fallen, and which the seller
thought he had removed from the hay, and sold it to the pur-
chaser, who was ignorant of the fact, and who fed the hay to
the cow, which died.  The action was to recover the value of
the cow, and in the course of the opinion the court made the
foregoing observation.  The purchaser recovered judgment in
the court below for the value of the cow, and the judgment
was affirmed on appeal.  To the same effect are the cases of
*Provost* v. *Cook,* 184 Mass. 315, 68 N. E. 336, and *Coyle* v.
*Baum,* 3 Okl. 695, 41 Pac. 389.

The plaintiff in this case alleged and proved all the ele-
ments which, under the law, entitled him to recover, and hence
there is nothing in the contention that the verdict of the jury
and judgment are contrary to law and facts, nor is it of any
importance, under the circumstances, that both parties as-
sumed that the right of recovery depended on a warranty.
Nor is there any merit in the contention that the court erred in
charging the jury with regard to the measure of damages.
The charge in that regard was in compliance with the law
as indicated above.  Nor did the court commit reversible error
in refusing defendants' requests to charge.  While it is true,

as we have already pointed out, the court's charge could have been improved on, yet the requests were based upon the same theory that the court's charge was based on, and thus would not have enlightened the jury nor aided them in arriving at a verdict. But the jury, under the evidence and law applicable thereto, arrived at a proper verdict. We have not discovered anything in the record from which we can say the defendants suffered prejudice. It is true that their counsel assigned many errors occurring in the admission of evidence which he contends were prejudicial. While the court admitted a few answers which verged on the border line of being hearsay and conclusions, yet all of these were harmless. If they all had been excluded from the record, the evidence would, to all intents and purposes, still have been the same. Nor was there anything in the answers objected to which could have misled or influenced the jury to defendants' prejudice. Considering the record as a whole, we are clearly of the opinion that, under all the circumstances of this case, no prejudicial error was committed by the court.

The judgment therefore should be, and it accordingly is, affirmed, with costs.

STRAUP, C. J., and McCARTY, J., concur.

## ON APPLICATION FOR REHEARING.

FRICK, J.

A petition for a rehearing has been filed in which it is strenuously insisted that the decision is erroneous in the following particulars:

(1) It is contended that we erred in not reversing the judgment, for the reason that the trial court erred in not sustaining appellants' motion to dismiss the complaint for failure to prosecute the action, and that we failed to pass or at least failed to sufficiently state our reasons in passing, upon that assignment in the original opinion. There is not the slightest merit to the contention. The case had been at issue about three years. In this state, if an action be determined

otherwise than upon the merits, the plaintiff may, within one year thereafter, bring another on. the same cause of action regardless of the statute of limitations, provided only that the original action was timely begun.  A defendant moving to dismiss, although his motion be sustained, can gain no permanent advantage, since the plaintiff has the right at any time within a year to bring another action.  In view of that fact, the whole matter of whether a motion to dismiss for want of prosecution should be sustained or not should be permitted to rest within the sound discretion of the trial courts.  If those courts, therefore, refuse to dismiss the action on that ground, we should not interfere unless and until it is clearly made to appear that the defendant in the action has been prejudiced in some substantial right.  Merely failing to promptly prosecute an action is not sufficient to show prejudice.  This is especially true where the defendant may himself press the action to trial.  Appellant could have done that at any time within the three years the action was pending. This court, in a number of decisions, has clearly indicated that it is the policy of the law to have cases tried and determined upon the merits whenever such a course is possible, and where it does not clearly invade the rights of one of the parties.  The motion in question was, however, not made a part of the bill of exceptions, and it is very doubtful, to say the least, whether or not it is a part of the judgment roll.  We think it is not. We gave the appellant the benefit of the doubt, however, and passed on the motion.  The trial court in no possible view, therefore, committed error in denying the motion to dismiss.

(2)   It is next insisted that we erred in failing to hold that the trial court had erred in not sustaining appellants' motion to strike certain allegations from the complaint.  Counsel, in his original brief, remained absolutely silent upon that subject, and therefore, under the well-settled practice of this court, he had waived that assignment.  That also must have been the view respondent's counsel took of the matter, since he likewise said nothing in respect thereto in his brief.  But, above and beyond all, the motion was entirely too sweeping, and it would have been error had the court sustained it.

(3)   It is further contended that we erred in not holding

that the trial court should have sustained appellants' motion for a nonsuit. This contention is, if possible, more devoid of merit than are the other two we have just discussed. The motion is not even referred to in the abstract, and upon an examination of the original bill of exceptions all that is made to appear respecting the same is as follows:

"Mr. Moffat: Now, if the court please, I desire to interpose a motion for a non-suit. (Motion for non-suit argued and submitted.)

"The Court: The motion may be denied."

In the face of this record no comment seems necessary.

(4) Finally, it is insisted that there was not sufficient evidence to sustain the verdict upon the second cause of action. Here again counsel has failed to comply with the rule of this court in failing to specify in what particulars the evidence is insufficient. We cannot supply matters of that character. In considering the assignments in the original opinion we passed upon every one which, in our judgment, was properly before us, or which possessed any merit whatever, and in case of doubt, in every instance, gave the benefit of such doubt to the appellant. Now counsel files a petition for rehearing in which he complains that this court has not done what under the settled practice we were powerless to do.

The petition is denied.

STRAUP, C. J., and McCARTY, J., concur.