WESTINGHOUSE ELECTRIC SUPPLY
COMPANY, Plaintiff and Appellant,

v.

PAUL W. LARSEN CONTRACTOR, INC., a
Utah Corporation, et al., Defend-
ants and Respondents.

No. 14040.

Supreme Court of Utah.

Dec. 18, 1975.

C. R. Henrikson, of Henrikson, Fair-
bourn & Tate, Salt Lake City, for plaintiff
and appellant.

Joseph J. Palmer, of Moyle & Draper,
Salt Lake City, for Skyline and General.

Harry D. Pugsley, Salt Lake City, for
Larsen.

CROCKETT, Justice:

Westinghouse Electric Supply Company
sued Skyline Construction, general contrac-
tor, for balance due for electrical equip-
ment it had supplied to a subcontractor,
Paul W. Larsen Contractor, Inc., for con-
struction of the Behavioral Science Build-

ing at the University of Utah.[1] In addition to the time involved in reciprocal pleadings, considerable time was consumed in connection with discovery procedures. As a result of the delays, the trial court granted defendants' motion to dismiss on the ground that plaintiff had failed to diligently prosecute the action[2]; and included in its order that the action is "dismissed with prejudice" and that, " . . . this judgment be and is hereby determined to be a final judgment."

Plaintiff filed motions to vacate the order; and also to delete therefrom the just quoted provisions and grant a trial on the merits. From a denial of these motions plaintiff appeals, contending that the court abused its discretion.

In performing its subcontract to install the electrical system and equipment, Larsen purchased its supplies from Westinghouse. Defendant General Insurance Company of America furnished the required bond to insure payments to material men.[3] During the course of construction, in 1970, Larsen fell into financial difficulties and was unable to keep current its payments to Westinghouse. In order to assure Westinghouse would be paid, in May of that year, the three parties agreed that thereafter Skyline would make Larsen's checks payable jointly to Larsen and Westinghouse and that future purchases were to be approved by Skyline, ordered on its forms and invoiced to Skyline.

Despite this arrangement, difficulties still persisted in getting the account paid. Westinghouse gave formal notice on February 25, 1971, requiring payment by Skyline and/or its bondsman General Insurance. Payment not being forthcoming, on July 14, 1971, Westinghouse's counsel wrote to Skyline claiming $41,357.22 for materials furnished to Larsen, of which $22,541.14 was invoiced to Skyline. On February 10, 1972, Westinghouse commenced this action against Skyline, Larsen, and General Insurance for the $41,357.22. (Larsen is not a party to this appeal. For that reason, its dealings with Westinghouse and its conduct in the lawsuit are not discussed. Skyline and General are hereafter referred to collectively as "defendants.")

On February 17, 1972, defendants filed a motion to dismiss Westinghouse's complaint for failure to state the date of last delivery of materials.[4] And, on the same day, defendants' counsel wrote Westinghouse's counsel and requested that Westinghouse collect the invoices on those goods sold directly to Larsen and provide a record of all payments by either Skyline or Larsen.

It is indicated that some efforts were made to settle the matter. But after it appeared that they would not be successful, Westinghouse noticed up for hearing defendants' motion to dismiss on July 20, 1973. The following month, on August 15, 1973, defendants filed a motion to dismiss on the additional ground of failure to prosecute the action and in a supporting affidavit stated:

That Westinghouse had not produced the invoices and records requested; that in September, 1972, Skyline had assigned its assets for benefit of its creditors; that in October, 1972, Larsen had discontinued operations and gone into receivership; and that, due to the insolvency and the release of employees who had knowledge of the materials used and Westinghouse's failure to provide requested information, the defendants' ability to defend the action was substantially impaired.

---

1. The essential facts recited herein are substantially without dispute as shown by the record and the affidavit of Westinghouse's counsel.

2. Rule 41(b), U.R.C.P. provides that: For failure of the plaintiff to prosecute a defendant may move for dismissal of an action.

3. Pursuant to § 14–1–5, U.C.A.1953.

4. Sec. 14–1–6, U.C.A.1953, requires written notice to the general contractor within 90 days and that suit be commenced within one year after the day on which the last labor or materials were supplied.

The District Court denied both of the motions to dismiss on August 20, 1973, and allowed Westinghouse to amend the complaint to allege the last date of delivery of materials, which it did the next day, August 21, 1973. Shortly thereafter, on September 10, 1973, Westinghouse's counsel sent to the defendants copies of 102 unpaid invoices, 45 pertaining to the Larsen account and 57 pertaining to the Skyline account, with a letter requesting the defendants to review the invoices as soon as possible, because they would be followed by interrogatories and other discovery procedures.

The defendants answered on September 12, 1973, and filed a request that Westinghouse produce within one month, at the office of defendants' counsel, all documents pertaining to Westinghouse's claims: (1) purchase orders; (2) delivery receipts and invoices; (3) records as to payments; (4) any notices given by Westinghouse of claims on the performance bond; (5) all documents, notes, letters or memoranda pertaining to conversations; and (6) all correspondence, between the parties.

With respect to that demand, these facts are noteworthy: that it was a very extensive request; and that much of the material requested, or copies thereof, should have already been in possession of the defendants. Plaintiff Westinghouse is a large concern, having national and in fact world-wide operations, of which the Salt Lake City office is only a regional distribution center. The electrical supplies involved here had been shipped from various places and most of them directly from factories or distribution centers to this job; and each plant issued its own invoices and maintained its own records.

It is further shown that after this demand, from October, 1973, to May, 1974, Westinghouse's personnel spent considerable time and effort searching the company's division depositories and its national archive to obtain the documentation required and to transmit it to its Salt Lake City office. Counsel for Westinghouse telephoned the office of defendants' counsel in May, 1974, and left a message that the records were at Westinghouse's office, but that due to their volume, defendants' counsel should come there to examine them. Again on July 15, 1974, counsel for Westinghouse telephoned the office of defendants' counsel and, unable to speak with counsel, left a similar message. This was a substantial compliance with the request.[5]

During October, 1974, Westinghouse's counsel prepared requests for admissions, interrogatories, and motions to produce which were to be served upon the defendants after they had reviewed the documents and records gathered by Westinghouse in its office. But defendants' counsel did not come to make such examination. Instead of doing so, on January 9, 1975, the defendants served their second motion to dismiss for failure of prosecution on the ground that Westinghouse had not delivered the documents in accordance with defendants' request. The following day, January 10, 1975, Westinghouse filed the interrogatories, requests for admissions, and its own motion to produce documents. To this the defendants filed objections. It was upon that state of the record, and upon the basis of the above recited occurrences, that on February 27, 1975, the trial court granted the defendants' motion to dismiss.

In the light of the foregoing, we turn to the sole issue presented to this appeal: whether the granting of that motion with prejudice was an abuse of discretion.

In doing so it is appropriate to have in mind some established principles applicable to such situations. It is not to be doubted that in order to handle the business of the court with efficiency and expedition the trial court should have a reasonable latitude of discretion in dismissing for

5. That the making available of voluminous records satisfies such a demand see *Sprague* *v. Boyles Bros. Drilling Co.*, 4 Utah 2d 344, 294 P.2d 689 (1956).

failure to prosecute[6] if a party fails to move forward according to the rules and the directions of the court, without justifiable excuse.[7] But that prerogative falls short of unreasonable and arbitrary action which will result in injustice. Whether there is such justifiable excuse is to be determined by considering more factors than merely the length of time since the suit was filed. Some consideration should be given to the conduct of both parties, and to the opportunity each has had to move the case forward and what they have done about it[8]; and also what difficulty or prejudice may have been caused to the other side; and most important, whether injustice may result from the dismissal.

■ Applying those principles here, these observations are pertinent: although there was unusual delay in getting this case to trial, this was due in large part to the unusual circumstances delineated above. Further, we are not impressed that the defendants themselves were overly diligent or manifest any particular haste in getting the pretrial discovery procedures completed and on with the trial. They did not do so in responsive action to Westinghouse's having assembled records, nor to the latter's messages concerning their availability, nor did they seek any assistance from the court.[9]

It is indeed commendable to handle cases with dispatch and to move calendars with expedition in order to keep them up to date. But it is even more important to keep in mind that the very reason for the existence of courts is to afford disputants an opportunity to be heard and to do justice between them. In conformity with that principle the courts generally tend to favor granting relief from default judgments where there is any reasonable excuse, unless it will result in substantial prejudice or injustice to the adverse party.[10]

It is our conclusion that the trial court failed to give proper weight to the higher priority; and that under the circumstances described herein, the order of dismissal was an abuse of discretion. It is therefore necessary that the order be vacated and the case remanded for further proceedings. Costs to plaintiff (appellant).

ELLETT, TUCKETT and MAUGHAN, JJ., concur.

HENRIOD, Chief Justice (dissenting):

I dissent,—noting at the outset that the main opinion's footnote to its first sentence, disarmingly emphasizes that "The essential facts recited herein are *substantially without dispute* . . . ."—which is not the test for reversal,—that being whether there are substantial believable facts to support the lower court.

Plaintiff furnished equipment to Skyline, general contractor, and to Larsen, its subcontractor, starting in 1970 and continuing in 1971. Defendant, General Insurance, was the statutory[1] surety to pay for such equipment if Skyline defaulted, which it apparently did, for an undetermined amount. Westinghouse claimed it was about $64,000, which defendants generally denied.

Westinghouse sued on February 10, 1972, after unsuccessful negotiations for an accounting and payment had been indulged by the parties for a considerable length of time prior to the institution of this litigation. The suit was prompted, apparently,

6. See *Thompson Ditch Co. v. Jackson*, 29 Utah 2d 259, 508 P.2d 528 (1973); *Brasher Motor and Finance Co. v. Brown*, 23 Utah 2d 247, 461 P.2d 464 (1969).

7. See Rule 37 U.R.C.P.; *Maxfield v. Fishler*, 538 P.2d 1323 (Utah 1975).

8. See *Crystal Line & Cement Co. v. Robbins*, 8 Utah 2d 389, 335 P.2d 624 (1959); *Wright v. Howe*, 46 Utah 588, 150 P. 956 (1915).

9. As permitted by Rule 37, U.R.C.P.

10. See Rule 55(c) and 60(b), U.R.C.P.; *Heathman v. Fabian & Clendenin*, 14 Utah 2d 60, 377 P.2d 189 (1962); *Utah Commercial & Savings Bank v. Trumbo*, 17 Utah 198, 53 P. 1033 (1898).

1. Title 14–1–5, U.C.A.1953.

to comply with the statutory requirement to file suit within one year after the last materials are furnished.[2] There was no counterclaim,—only an answer.

About 90% of the record consisted of communications, motions, memoranda, requests for production of documents, interrogatories, etc.

The salient, believable, admissible facts that support the trial judge's decision, arrived at by the exercise of his discretion, —which the rules say is his,—together with the principle that on appellate review, the trial judge is affirmed unless arbitrary and capricious to the point reflecting a clear abuse of discretion,[3] fairly may be condensed thus:

In 1970–71, plaintiff furnished materials to Skyline and Larsen, the general and subcontractor defendants. The last were delivered on October 27, 1971. The complaint followed on February 2, 1972.[4] A week later, on February 9, 1972, defendants moved to dismiss for *failure to state a claim*, which has little significance here. A couple of weeks later, on February 24, 1972, defendant Larsen requested records of plaintiff, having to do with sales, delivery, payments, and the like.[5] Plaintiff did not answer interrogatories presented until five months later, on July 17, 1972, and then simply responded to the effect that it had some receipts.

A year and one month later, on August 15, 1973, defendants, through their counsel's affidavit, complained that plaintiff had not furnished the requested records and filed a motion to dismiss under Rule 41(b), "for failure . . . to prosecute . . . ." Two days later, plaintiff's counsel advised defendant's counsel that the records were ready. Five days later, on August 22, 1973, the motion was denied

and plaintiff was given ten days to amend (obviously to allow plaintiff to allege when the last materials had been furnished, a fact plaintiff had neglected to allege in its complaint). About five months later, on January 9, 1975, which was about *15 months* after plaintiff's first motion to dismiss for lack of prosecution (August 15, 1973, supra) and about *three years after the complaint was filed*, defendants *again* filed a motion to dismiss *for failure to prosecute the action*, as had been the case on August 15, 1973. There followed a number of motions, notices, memoranda, affidavits, etc. when the motion was granted dismissing the action with prejudice.

During the three years this action was pending, the two defendants that primarily were obligated to pay for the materials went broke.

There is substantial evidence to the effect that the delay presented a practical, difficult problem for the remaining defendant,—the only one with means,—to accumulate evidence because of scattering of the personnel of the other two, coupled with the circumstances of dimming memories, all of which gave the remaining defendant a rather slim chance of assuming a burden of going forward,—which basically was that of the plaintiff.

Under the circumstances of this case, hardly can it be said that the trial judge's mandate arose out of an arbitrary or capricious abuse of his discretion.

On more than one occasion, this court has defended and affirmed such discretionary orders against a charge of abuse, in cases appearing factually to justify affirmance of the order here, as much as justified affirmance on the facts prevailing in those cases. About the most recent is *Thompson Ditch v. Jackson*, 29 Utah 2d

---

2. Title 14–1–6, U.C.A.1953.

3. *Thompson v. Jackson*, 29 Utah 2d 259, 508 P.2d 528 (1973).

4. During which period the parties appeared to have been trying to reconcile their accounting.

5. Which had to be gathered from out of state sources, making it difficult to examine in plaintiff's local office.

259, 508 P.2d 528 (1973), where unanimously we said:

> The ruling of the court below will not be disturbed on appeal unless the record plainly shows that the court below abused its discretion. The action of the court was taken in accordance with the provisions of Rule 41(b) . . . as follows: . . . For failure . . . to prosecute . . .

It is to be noted that we sustained the order there on the merits, the order not having been made *with* or *without* prejudice. The rest of the same Rule 41(b) takes care of any such unspecific order when it states that:

> Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for . . . operates as *an adjudication on the merits.*

The plaintiff in its brief asked only "that this court reverse the trial court, reinstate appellant's action . . . and order the case to be set for trial upon the merits." It did not ask for a dismissal without prejudice, so that it would be inapropos for this court to send the case back for entry of an unsolicited order of dismissal without prejudice,—which might initiate a new round of protraction perhaps as great or greater than that prevailing to date.

Besides *Thompson Ditch v. Jackson,* supra, in *Pacer v. Myers,* 534 P.2d 616 (Utah 1975), similar language was expressed, wherein, although not a case under Rule 41(b), the court refused to set aside a default judgment, we said, "We, on appeal, should not reverse its ruling except for abuse of discretion, to wit, that it is arbitrary, capricious, or not based on adequate findings of fact or on the law."

Such was the case also in *Brasher v. Brown,* 23 Utah 2d 247, 461 P.2d 464

(1969), where even though Rule 41(b) was mentioned but not the basis of the opinion, we said that the court has an inherent discretion, irrespective of the Rule, to dismiss for lack of prosecution and that in doing so we affirm unless there is manifest abuse of discretion reflected, adopting the rule reflected in *Reed v. First National Bank,* 194 Or. 45, 241 P.2d 109 (1952), which said:

> In dismissing an action for want of prosecution, the court may proceed under the statute, or it may, of its own motion, take action to that end. In acting on its own motion, the court must proceed with judicial discretion. Its ruling will not be disturbed on appeal unless it is manifest from the record that the court's discretion has been abused.[6]

In my opinion the main opinion has substituted its own unwarranted choice of the evidence as a substitute for what many times we have held to be the prerogative of the fact-finder,—which we have said elsewhere is in an advantaged position to observe, discern, weigh, canvass, review and determine,—but not in the instant instance.

One of the hallmarkian principles espoused by such opinion is that:

> Some consideration should be given to the conduct of both parties, and to the opportunity each has had to move the case forward and what they have done about it; and also what difficulty or prejudice may have been caused to the other side; and most important, what injustice may result from the dismissal.

Applying such technique here, the evidence eminently adjusts itself to such words of wisdom or platitudes, as one chooses,—which prompts me to suggest that the trial court here should be affirmed, since apparently such principles *were* considered.

---

6. See also *Maxfield v. Fishler,* Utah, 538 P.2d 1323, this Court, and 24 Am.Jur. 49, Dismissal Sec. 59.