**Reed MAXFIELD, Plaintiff and Appellant,**

v.

**Owen A. RUSHTON and Carol Rushton, his wife, Defendants and Respondents.**

**Owen A. RUSHTON and Carol Rushton, his wife, Third–Party Plaintiffs and Respondents,**

v.

**STATE of Utah, By and Through UTAH STATE DEPARTMENT OF SOCIAL SERVICES, Third–Party Defendants and Co–Respondents.**

No. 880332–CA.

Court of Appeals of Utah.

Aug. 23, 1989.

Lorin N. Pace, Salt Lake City, for plaintiff and appellant.

Henry S. Nygaard, Salt Lake City, for defendants and respondents.

David L. Wilkinson, Stephen G. Schwendiman, Bernard M. Tanner, Leonard E.

McGee, Salt Lake City, for third-party defendants and co-respondents.

Before GARFF, GREENWOOD and ORME, JJ.

GARFF, Judge:

Plaintiff and appellant, Reed Maxfield, appeals the trial court's dismissal of his action against defendants and respondents, Owen A. and Carol Rushton, and the State of Utah, for failure to prosecute. We affirm the trial court's dismissal of his action.

We recite only those facts pertinent to disposition of this appeal.

Maxfield initially filed his complaint in this action on October 20, 1980, alleging that the Rushtons had wrongfully deprived him of his property by purchasing it through an illegal sheriff's sale. The Rushtons filed their answer and counterclaim on April 1, 1981, along with a third-party complaint against the State of Utah, requesting reimbursement of the purchase price for the property if the court should find in Maxfield's favor. On April 14, 1981, the State answered the Rushtons' third-party complaint and filed a third-party complaint against Maxfield.

From October 20, 1980 until December 14, 1984, various motions were filed by the parties, primarily by Maxfield, resulting in obfuscation of the issues and protracted delay. Two additional factors contributed to the delay: an eighteen month interruption while the Rushtons were on a mission for their church, and a bankruptcy filing by Maxfield.

The case remained in limbo for nearly two years as a result of Maxfield's bankruptcy. Finally, on November 18, 1986, the Rushtons filed a certificate of readiness for trial. Ten days later, Maxfield objected to setting the case for trial because he wished to amend his complaint by adding further claims against the State, his discovery was incomplete, his bankruptcy stay was presently effective, and his new attorney needed time to familiarize himself with the case. Despite Maxfield's objections, on February 20, 1987, the bankruptcy court ordered that the case could be heard in district court.

Thereupon, the State filed for an immediate trial setting.

On March 4, 1987, Maxfield's counsel withdrew because Maxfield had failed to pay him. On March 20, 1987, the Rushtons gave Maxfield notice to obtain substitute counsel and, again, moved for an immediate trial setting. A hearing was scheduled on this motion for June 1, 1987. On May 18, 1987, Maxfield filed a *pro se* objection to the trial setting on the grounds that he was incapable of handling the case himself and that he was in the process of seeking new counsel.

At the June 1 hearing, the court set trial for September 15, 1987, and scheduled a pretrial hearing on August 31, 1987. All discovery was to be completed prior to August 17, 1987.

On August 10, 1987, the State certified to the court that it had complied with Maxfield's discovery requests, answered Maxfield's proposed second amended complaint, and moved for summary judgment against Maxfield. Maxfield filed a motion to dismiss all claims by other parties against him because of his discharge in bankruptcy and filed an objection to the trial setting, requesting a two month continuance on the grounds that his new counsel had scheduling problems and that he intended to file a third amended complaint. The court scheduled a hearing on the State's motion for summary judgment for August 24, 1987.

Between August 11 and 17, 1987, the parties filed more miscellaneous motions. On August 17, 1987, the court denied Maxfield's motion to continue the trial date or to extend discovery time. Thereafter, Maxfield filed a response to the State's motion for summary judgment, alleging insufficient discovery time, and filed his third amended complaint, which set forth a new conspiracy theory between the Rushtons and the State.

On August 20, 1987, the State submitted a list of expected witnesses and a certificate of compliance with Maxfield's discovery requests. The following day, it objected to Maxfield's third amended complaint. The Rushtons filed a similar objection. The trial court heard all the parties'

motions on August 24, 1987, denying Maxfield's motion to file a third amended complaint and also the State's motion for summary judgment.

At the pretrial hearing on August 31, 1987, the trial court again denied the parties' prior motions. Maxfield's new attorney moved to withdraw as counsel. The court denied counsel's motion to withdraw, and ordered that Maxfield's action be dismissed for failure to timely prosecute. Maxfield subsequently appealed this order.

On appeal, Maxfield argues that the trial court erred in: (1) dismissing his action for failure to prosecute; (2) refusing to grant summary judgment in his favor; and (3) refusing either to void the sheriff's sale, thereby quieting title in his favor, or to grant him the immediate right to redeem the properties.

The trial court dismissed Maxfield's cause of action, pursuant to Rule 41(b) of the Utah Rules of Civil Procedure, for his "failure to timely prosecute the case."[1] Such a dismissal, under Rule 41(b), "operates as an adjudication upon the merits" of the case.

It is well established that the trial court may, on its own motion, dismiss an action for want of prosecution under Rule 41(b). *Brasher Motor & Fin. Co. v. Brown*, 23 Utah 2d 247, 461 P.2d 464, 464–65 (1969); *Charlie Brown Constr. Co. v. Leisure Sports Inc.*, 740 P.2d 1368, 1370 (Utah Ct. App.1987). This authority is an " 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Charlie Brown Constr. Co.*, 740 P.2d at 1370 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962)). Therefore, the trial court has "a reasonable latitude of discretion in dismissing for failure to prosecute if a party fails to move forward according to the rules and the directions of the court, without justifiable excuse." *Westinghouse Elec. Supply Co.*

*v. Paul W. Larsen Contractor Inc.*, 544 P.2d 876, 878–79 (Utah 1975) (footnote omitted). Consequently, a lower court's dismissal of a case under Rule 41(b) will not be disturbed on appeal unless it is clear from the record that it has abused its discretion. *Wilson v. Lambert*, 613 P.2d 765, 767 (Utah 1980); *Department of Social Servs. v. Romero*, 609 P.2d 1323, 1324 (Utah 1980); *Reliance Nat. Life Ins. Co. v. Caine*, 555 P.2d 276, 277 (Utah 1976); *Thompson Ditch Co. v. Jackson*, 29 Utah 2d 259, 508 P.2d 528, 529 (1973).

■ A court's discretion, however, must be balanced against a higher priority: to "afford disputants an opportunity to be heard and to do justice between them." *Westinghouse Elec. Supply Co.*, 544 P.2d at 879. Thus, there is more to consider in determining if a dismissal for failure to prosecute is proper than merely the amount of time elapsed since the suit was filed. *Id.* The factors which we consider may include the following: (1) The conduct of both parties; (2) the opportunity each party has had to move the case forward; (3) what each of the parties has done to move the case forward; (4) what difficulty or prejudice may have been caused to the other side; and (5) most important, whether injustice may result from the dismissal. *K.L.C. Inc. v. McLean*, 656 P.2d 986, 988 (Utah 1982); *Utah Oil Co. v. Harris*, 565 P.2d 1135, 1137 (Utah 1977).

■ After a thorough review of the record, we find that Maxfield was dilatory in prosecuting the case. After he filed his complaint on October 20, 1980, he amended it twice and attempted to amend it yet a third time, each time adding additional theories of the case. He moved three times for summary judgment: the first time on March 11, 1981, prior to joinder of the State; the second time on May 30, 1984; and the third time on June 19, 1984, when he neglected to give adequate notice of the hearing to opposing counsel. He filed an interlocutory appeal in 1981, appealing the trial court's refusal to grant his first mo-

---

1. Utah R.Civ.P. 41(b), in part, states that "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him."

tion for summary judgment, which the supreme court declined to hear. He then filed a number of miscellaneous, primarily self-serving motions over the course of the proceedings, none of which served to move the case forward, but were, instead, apparent attempts to circumvent the denial of his motions for summary judgment. He further delayed prosecution of the case for nearly two years by filing for bankruptcy on December 10, 1984, shortly before the case was to come to trial. During this bankruptcy action, he assigned his interest in the disputed property, which was his major asset, to a corporation which he allegedly owned and controlled as the primary shareholder. Further, on the three occasions trial dates were set, he objected to the trial settings on the grounds that he wished to amend his complaint, that he was involved in the bankruptcy proceeding, and that his new counsel had inadequate preparation time. During the course of the action, he retained three different attorneys, two of whom withdrew from the case because of his failure to pay them. He filed no certificates of readiness for trial and, despite his protests as to insufficient discovery time, no motions for the taking of depositions.

Although the Rushtons did not answer Maxfield's complaint for approximately six and one-half months after it was initially filed, the rest of their conduct and that of the State generally served to move the case along. Together, the Rushtons and the State filed four motions indicating their readiness for trial, one of which was filed almost immediately after the Rushtons returned from their mission. The record indicates that they actively pursued discovery, including the taking of depositions, and certified twice that they had complied with Maxfield's discovery requests. In contrast, they had to file motions twice to compel Maxfield to comply with their discovery requests.

In evaluating the relevant factors, we find, first, that Maxfield's conduct in prosecuting the case was dilatory while defendants' overall conduct served to move the case along.

Second, although both parties were unable at times to move the case forward, Maxfield's behavior was more dilatory. Maxfield was unable to prosecute the case while the Rushtons served their eighteen month mission. However, once the Rushtons returned, they almost immediately notified the court that they were ready to proceed to trial. Similarly, defendants were unable to prosecute the case during the pendency of Maxfield's twenty-two month bankruptcy action. Unlike the Rushtons, however, Maxfield did not voluntarily inform the court that his bankruptcy action was completed and the case could move forward in district court, but, instead, objected to trial settings and waited for the State to petition the bankruptcy court for permission to proceed with the action.

Third, despite his prodigious number of motions, little or nothing that Maxfield did after filing his initial complaint served to move the case along, while virtually everything that defendants did after the Rushtons returned home from their mission did.

Fourth, defendants argue that, if we overrule the trial court and remand this case for hearing on the merits, they will be substantially prejudiced because many of their witnesses have either forgotten the events surrounding the controversy or have become unavailable in the nine years this case has been pending. To rebut Maxfield's assertion that he will be prejudiced by loss of his property interest without having had his day in court, defendants point out that Maxfield's property interest is already assigned to a corporation in which he claims to have no interest. We do not find these assertions to be unreasonable.

Fifth, while we recognize that injustice could result from dismissal of this case, in that Maxfield will lose whatever interest he may have in the disputed property without having the opportunity to argue his case on its merits, we conclude that he had more than ample opportunity to prove his asserted interest and simply failed to do so. Such nonaction is inexcusable, not only from the standpoint of the parties, but also

because it constitutes abuse of the judicial process.

In *Maxfield v. Fishler,* 538 P.2d 1323, 1324–25 (Utah 1975), the Utah Supreme Court found that the trial court justifiably dismissed the plaintiff's case because she had been dilatory in responding to the defendant's efforts at discovery, had resisted attempts made by the defendant to get the case to trial, was not ready to proceed at the time of the trial date because of inexcusable neglect, and had no justification for continuance as required by Utah R.Civ.P. 40(b).[2] We find that the present case is factually comparable to *Maxfield v. Fishler* and other cases which have been dismissed for failure to prosecute. *See e.g., Thompson Ditch Co.,* 508 P.2d at 528. We, therefore, affirm the trial court's judgment in dismissing Maxfield's action.

Because this issue is dispositive of the case, we decline to address Maxfield's remaining issues. Costs on appeal to defendants.

GREENWOOD, J., concurs.

ORME, Judge (concurring specially):

Sua sponte dismissal for failure to prosecute is usually not appropriate except when it follows a substantial period of complete inactivity. It would be an extraordinary case where such a dismissal would be appropriate with trial scheduled in just a few days, especially following a flurry of motion activity. While the question is a closer one for me than the main opinion may suggest, I am persuaded this is that extraordinary case.

In my view, what saves the dismissal in this case from crossing into the realm of abused discretion is this: Maxfield's latest counsel's motion for leave to withdraw coupled with his motion for leave to file yet

another amended complaint constituted, taken together, a concession by Maxfield that he was nowhere near being ready to try his case in a matter of a few days even though the action had been pending for the better part of a decade. It is the length of time this action had been pending coupled with Maxfield's obvious unreadiness that make sua sponte dismissal appropriate in this case. I reiterate, however, that in the ordinary case where a trial date is set, potentially dispositive motions have been denied at a recent pretrial, and all parties are represented by counsel, however reluctant such representation might be, the appropriate course for the court is simply to try the case, even though earlier periods of inaction may exist.

I also wish to comment on two aspects of the main opinion's analysis of the parties' comparative culpability in connection with the delays which plagued this case. First, the opinion says that "Maxfield was unable to prosecute the case while the Rushtons served their eighteen month mission" and seems to imply that the Rushtons were likewise relieved of their duty to move the case along during that period. However, voluntary absence from the jurisdiction does not insulate a party from litigation nor is it a legitimate justification for avoiding one's own litigation obligations. This is so even where the reasons for the absence are well-intentioned, such as with the Rushtons' religious mission in this case.

Second, the main opinion seems to blame Maxfield for a delay of nearly two years following his bankruptcy filing and to suggest that Rushtons were excused from pursuing their counterclaims during that time. But from all that appears, Maxfield's bankruptcy petition was legitimate under federal law and I do not see how we can fault

2. Utah R.Civ.P. 40(b) provides that:
Upon motion of a party, the court may in its discretion, and upon such terms as may be just, including the payment of costs occasioned by such postponement, postpone a trial or proceeding upon good cause shown. If the motion is made upon the ground of the absence of evidence, such motion shall also set forth the materiality of the evidence expected to be obtained and shall show that due dil-

igence has been used to procure it. The court may also require the party seeking the continuance to state, upon affidavit or under oath the evidence he expects to obtain, and if the adverse party thereupon admits that such evidence would be given, and that it may be considered as actually given on the trial, or offered and excluded as improper, the trial shall not be postponed upon that ground.

him for taking advantage of his rights under this federal scheme. That being the case, 11 U.S.C. § 362 stayed the Rushtons and the state from pursuing their claims against him. Of course, this "automatic stay" protects the debtor from the prosecution of actions *against* him, but does not, of itself, excuse him from proceeding with *his* actions pending against others. Nonetheless, the debtor's claims pending against others become the property of the bankruptcy estate and where the bankruptcy is one where a trustee is appointed, the trustee succeeds the debtor as real party in interest relative to those claims. The trustee enjoys the authority to administer the claims, i.e., pursue them, settle them, or abandon them as the *trustee* may deem appropriate. Thus, Maxfield may not be responsible for the inactivity in the instant action which followed his bankruptcy filing. Even if he is, the delay may be entirely legitimate depending on the objectives and status of the bankruptcy cases and the ongoing progress of liquidation or reorganization.

Conversely, one who has an action pending against a party who files a bankruptcy petition—as with the Rushtons and their counterclaim against Maxfield—is not altogether helpless in the face of the bankruptcy filing. With leave of the bankruptcy court, as ultimately was obtained here, the claim can be pursued in state court at least to the point of liquidating the claim or, with consent of the non-bankruptcy party, can be adjudicated by the bankruptcy court. Depending on the particular case, waiting two years to request relief from the stay may or may not be consistent with appropriate diligence on the part of Rushton and the state.

In short, lengthy delays in state court litigation, for which "bankruptcy" is offered up as the major excuse, should be carefully scrutinized. Bankruptcy is simply not the hinderance to the timely resolution of disputes pending in state court which many would have state court judges believe.

The parties to the main action in this case sparred and postured for some seven years, showing little inclination to get their claims resolved on the merits. The system had been burdened long enough. Dismissal for failure to *timely* prosecute was an appropriate exercise of judicial discretion.