**STATE of Utah, By and Through UTAH STATE DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,**

v.

**Joey GUTIERREZ, Defendant and Appellant.**

No. 20396.

Supreme Court of Utah.

March 31, 1988.

John W. Ebert, Las Vegas, Nev., for appellant.

David L. Wilkinson, Sandy Mooy, Salt Lake City, for respondent.

STEWART, Associate Chief Justice:

The defendant, Joey Gutierrez, appeals from a judgment and decree declaring him to be the natural father of a child born to JoAnn Candelaria and ordering him to pay child support and reimburse the state for expenses relating to the birth and past support. On appeal, Gutierrez contends that the evidence was not sufficient to support the determination of paternity and that the trial court erred by not allowing testimony of the mother's reputation for honesty. We reverse and remand for a new trial.

JoAnn Candelaria is the unwed mother of two children, a son born January 22, 1980, and a daughter born December 30, 1980. In her application for public assistance, Ms. Candelaria listed the appellant, Joseph Gutierrez, as the possible father of both children. The State pursued a paternity action with respect to both children against Gutierrez.

At trial, three witnesses testified, Dr. Charles DeWitt, Ms. Candelaria, and the defendant. Dr. DeWitt testified concerning the results of human leukocyte antigen (HLA) tests performed on Gutierrez, Candelaria, and the children. Dr. DeWitt testified that the test results demonstrated that Gutierrez was not the father of the boy. Then, after delivering very confusing testimony which is detailed below, Dr. DeWitt testified there was a 95 percent probability that Gutierrez was the girl's father; however, Dr. DeWitt then went on to state that there were "five chances in ten thousand" of Ms. Candelaria's selecting a ran-

dom male with the right HLA complement to be the father.

JoAnn Candelaria testified that she met Gutierrez in the summer of 1979, no more than seven months before the birth of her son. She testified that she had intercourse with another man during the relevant time frame. Despite this evidence, Candelaria steadfastly asserted that Gutierrez was the father of her son, as she had stated in the affidavit she filed to receive assistance. Candelaria further testified that she had intercourse with Gutierrez three times after the birth of her son. However, she could give a date for only one instance of intercourse, viz., in May, 1980, two months after she knew of her pregnancy with her daughter. She had no recollection of when either of the other two episodes occurred. She further testified that Gutierrez was her only paramour during this time and that she did not inform Gutierrez or anyone else of her suspicion that he was the father of her children until 1983 when she signed the affidavit supporting the complaint in this case.

Gutierrez testified that he had intercourse with Candelaria during 1979, but denied that he did so after the birth of her son in January 1980. The trial judge found that Gutierrez was not the father of Candelaria's son, but that he was the father of her daughter and entered judgment accordingly.

### I.

On appeal, Gutierrez asserts that the evidence was insufficient to sustain the determination of paternity. This argument focuses primarily on the deficiencies in Candelaria's testimony but also attacks the HLA evidence presented by Dr. DeWitt. In other cases, we would not be so ready to examine incomplete arguments with little record support showing appropriate objections. However, paternity cases present a special situation because judgments in such cases may affect the rights and interests of an unrepresented party, the child. As we stated in *Larsen v. Collina*, 684 P.2d 52, 55 (Utah 1984):

The plaintiff's interest in these cases may be more devoted to obtaining support than in establishing the true identity of the father. However that may be in a given case, the court's order officially determines that the defendant is the child's father. Since such a determination could have important consequences for the child in the future, that determination should be made, even in a default proceeding, on the basis of reliable blood test results, if possible, showing that the defendant is the father of the child.

Because of the confusion in what the HLA tests actually demonstrated and because of the special interests presented by a paternity case, we reach the issue presented concerning the validity of the HLA tests.

Recently, this Court held that HLA test evidence is admissible if a proper foundation is laid and certain standards are met. *Kofford v. Flora*, 744 P.2d 1343 (Utah 1987); *Salzetti v. Nichols*, 744 P.2d 1362 (Utah 1987); *Martinez v. Lovato*, 744 P.2d 1364 (Utah 1987). In this case, the trial court relied heavily on the HLA evidence to find paternity. However, the record clearly establishes that the *Kofford* foundational requirements necessary to establish the validity of the tests and its results were not met. *See Kofford*, 744 P.2d at 1354–56.

The individual HLA worksheets prepared by laboratory technicians when the HLA tests were completed and a letter authored by Dr. DeWitt setting forth the HLA results were admitted into evidence, and Dr. DeWitt testified as to the results. This evidence was the source of much confusion concerning the true results of the HLA tests. For example, the worksheets both indicate that the mother has HLA alleles A2, A11, B17, and B27, but the letter authored by Dr. DeWitt states that she has A2, A11, B57, and B27; Dr. DeWitt testified that she has A2, A11, B17, and B27. A discrepancy, therefore, exists regarding which B alleles the mother possesses. (See *Kofford*, 744 P.2d at 1349–50, for a description of the terminology and nature of HLA testing.)

With respect to the daughter, one worksheet showed that she has HLA alleles "A2, A_, B17, and B_," while the other worksheet is marked "A2, A_, B17, B15." Dr. DeWitt's letter states that the daughter has alleles "A2, A2, B57, and B63," but Dr. DeWitt testified that she has A2, A2, B17, and B17. Again a discrepancy exists with respect to the B alleles. Finally, one worksheet shows that Gutierrez has alleles "A2, A_, B57, B63," while the other shows "A2, A_, B57, B62." The letter indicates that he has "A2, A_, B57, B63," and Dr. DeWitt testified that the defendant has A2, B57, and B63.

Several problems are evident. First, a complete set of alleles was never established for the defendant. Second, unexplained discrepancies exist for all three subjects between the actual test results and Dr. DeWitt's letter and testimony. Finally, the evidence was very confusing regarding the inheritance patterns of the alleles.

Some of the discrepancies among the reports can be explained by the fact that the technicians who performed the HLA tests scored the worksheets, while Dr. DeWitt examined the worksheets and deduced his results independently. However, his testimony contained no explanation of why his results varied from those found by the technicians. Another part of the discrepancy, and much of the confusion, arose from the fact that Dr. DeWitt testified that some alleles are actually subgroups of other alleles. For example, with respect to the defendant, Dr. DeWitt stated, "B15 can be divided into B62 and B63; and in one of the reports I have simply reported B15 whereas in the other report I have reported the subdivision B63." However, these explanations still do not account for the differences between the daughter and the putative father. Dr. DeWitt testified first that the daughter has alleles A2, A2, B17, and B17. He stated, "We know enough about the HLA antigens to know that in this case it means that [the daughter] has inherited a 2 from both parents, and that she has inherit-

ed a 17 from both parents." Later, he reaffirmed this conclusion, stating, "Now we know what has come from the father and that this 2 has come from the father of [the daughter] and the 17 has come from the father...." On these facts, it could appear that the defendant could not have contributed the necessary alleles.

Somewhat later, Dr. DeWitt may have contradicted himself when he stated, "To determine then—to return then to this, the father then of [the daughter] must have contributed the two—I am sorry, I missed something here, 17, 15. The father then of [the daughter] has contributed ..., the 2, 15...."[1] Dr. DeWitt also testified that the defendant is A2, A2, B57, and B63 and generally has the necessary HLA alleles to be the father. However, the specific testimony that supports this general conclusion is at best confusing. The testimony was probably best summarized by Dr. DeWitt himself when he stated, "I have really confused myself up there...."

■ The object of expert testimony is to assist the trier of fact in determining the ultimate issue. But when the testimony rendered by an expert is as confusing as that presented in this case, the issue is obfuscated, not clarified. Certainly an attorney who is the proponent of evidence which is to be introduced through an expert should assist the expert in presenting his evidence in such a way that it will be admissible and helpful to the finder of fact. In *Kofford*, this Court set forth specific requirements for what an HLA expert's testimony should contain. On remand, unless those requirements are met *and* the problems and discrepancies previously discussed are resolved, the expert's testimony should be totally disregarded.

## II.

The defendant also argues that the trial court erred in refusing to admit evidence of Candelaria's reputation in the community. On direct examination, defendant's attor-

---

1. We recognize, of course, that transcripts often have a perverse way of making lawyers, witnesses, and judges appear tongue-tied.

ney asked him, "Do you know of Ms. Candelaria's reputation?" Plaintiff objected on the ground that character evidence is not admissible for any purpose. The trial court reviewed Rule 404, Utah Rules of Evidence, and stated:

> I suppose that your intention is to show that her character—that she has a rather loose character when it comes to men. I am not sure that you can show that as evidence of the fact that she might have had relations with one or more other people during the [relevant] period....
>
> I think the objection is well taken; I will sustain it.

The defendant thereupon made the following proffer:

> I would proffer the testimony would be that Ms. Candelaria does have a reputation in the community of being promiscuous and does have that reputation at this time. I would also make the proffer that her reputation for the character trait of honesty is bad, that she has a reputation of being dishonest.

The number of sexual partners a mother has near the time of conception is one of the variables which directly affect the probability of paternity calculation derived from HLA test data, and evidence of the mother's sexual activity near the time of conception is admissible. *See Kofford*, 744 P.2d at 1353–54. Several courts have allowed evidence of a mother's promiscuity, either by specific instances of promiscuity or by a history of promiscuity. *See Lawrence v. Boyd*, 207 Kan. 776, 486 P.2d 1394 (1971); *N.R. v. A.D.*, 691 S.W.2d 350 (Mo. App.1985); *Angela B. v. Glenn D.*, 126 Misc.2d 646, 482 N.Y.S.2d 971 (N.Y.Fam. Ct.1984).

The defendant argues that Candelaria's reputation for honesty or truthfulness was admissible and that the court erred by not admitting such evidence. Utah Rule of Evidence 608(a) permits reputation evidence of untruthfulness to be admitted to attack a witness's credibility. In this case, counsel asked a broad question as to Candelaria's reputation generally, without specifying which character trait was being examined. As propounded, the question was objectionable because it went to her general character and not to a specific trait. Furthermore, a question directed to Candelaria's honesty was not proper under Rule 608(a). The issue was Candelaria's reputation for truth and veracity. The trial court committed no error in sustaining the objection to the question as propounded.

Reversed and remanded for a new trial.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.