396 P.2d 410

**TUCKER REALTY, INC., Plaintiff and Respondent,**

v.

**Doyle L. NUNLEY, Defendant and Appellant.**

**No. 10066.**

Supreme Court of Utah.

Nov. 9, 1964.

**98**

Horace J. Knowlton, Salt Lake City, for appellant.

Barker & Ryberg, Salt Lake City, for respondent.

CROCKETT, Justice.

This action is grounded upon a promissory note for $1,020, signed by the defendant, Doyle L. Nunley. It was commenced by service of summons on March 31, 1962. There having been no appearance or answer, judgment by default was entered August 24, 1962. Upon defendant's motion, served and filed in October, the trial court, on November 14, 1962, set aside the default judgment and permitted the defendant to file his answer.

Defendant does not deny the execution of the note, but claims discharge of the debt by a painting job on a duplex for which the plaintiff credited him with $300. He also set forth allegations in the nature of counterclaim that the suit was groundless and malicious; and asked compensatory damages in the sum of $5,000 and punitive damages in the sum of $10,000.

Shortly after the default was set aside, on November 27, 1962, plaintiff took defendant's deposition. In an obvious effort to test the truthfulness of defendant's claims as to this paint job, plaintiff's counsel questioned him as to who had done the work, the number of hours spent, the rate of pay, and the amount and source of materials used. Defendant made answers: That he himself had worked on the job. As to the time worked: " * * * I possibly put in—from checking the job and all, 25 or 30 hours"; that he had employed thereon his brother, James D. Nunley, and his son, James Arthur Nunley; that each had worked " * * * roughly, about 60 hours—between 55 and 60 hours." As to

the paint used, that it, "would amount to around $185"; and as to where it came from, that he had purchased materials from Peck-Ash-Parry, Salt Lake Glass & Paint Co., DeHaan Paint Co., and Skyline Paint Co.

In response to questions about keeping records of these matters, defendant stated that he had such records and that they were available. Thereafter, on January 9, 1963, plaintiff made a motion that the defendant be required to produce and allow plaintiff to inspect, copy or photograph these records relating to this job: his job book in which he said he had kept notations of the labor and material used; the record of the hours worked by himself and his employees; the employer's copies of (a) federal W2 income tax forms and (b) withholding tax returns; and the invoices showing paint purchases from the above named companies during that period.[1]

After a hearing on this motion, the court granted it, and on March 5, 1963, made an order that the defendant produce such records. It was not complied with except that on March 12, 1963, the defendant brought to the office of plaintiff's attorney a copy of the order but produced no such records or documents.

At the time of the pretrial, on October 19, 1963, in its pretrial order the court again directed that the defendant produce what-ever records he had pertaining to this transaction within 10 days, or default judgment would be taken against him. In response to this order, the defendant brought in one invoice for paint purchased from the Salt Lake Glass & Paint Co. in the amount of $35, but failed to produce any other records or documents. Plaintiff then filed a motion for a default judgment based upon such failure. The matter came on for hearing on December 19, 1963. Defendant represents to this court that he was sworn and testified, while plaintiff asserts to the contrary. Howsoever that may be, from the contentions of both parties, it is apparent that there was a proceeding participated in by the court, counsel for both sides and the defendant. After this hearing, the trial court on December 27, 1963, granted the plaintiff judgment. Defendant appeals, arguing that at the December 19 hearing he advised the court that he had no such records, and that he therefore had not wilfully failed to produce them.

The action of the trial court is grounded upon Rule 37, U.R.C.P. entitled "Refusal To Make Discovery: Consequences." Under (b) (2) (iii) it provides that if a party refuses to obey an order made under the discovery proceeding, the court may make "[a]n order striking out pleadings * * * or rendering a judgment by default against the disobedient party."

1. See Rule 34, Utah Rules of Civil Procedure relating to discovery procedure.

We recognize that the granting of a judgment against a party solely for disobeying an order to cooperate in discovery procedure is a stringent measure which should be employed with caution and restraint and only where the failure has been wilful and the interests of justice so demand. Except in very aggravated cases, less serious sanctions undoubtedly could be applied to accomplish the desired result, particularly where there is any likelihood of injustice by depriving a party of a meritorious cause of action or defense. Whether the failure to comply with the court's order has been wilful and whether the circumstances are so aggravated as to justify the action taken is primarily for the trial court to determine.[2] Unless it is shown that his action is without support in the record, or is a plain abuse of discretion, it should not be disturbed. There is nothing to suggest that such was the situation here. But on the contrary, there are several considerations which support the trial court's action.

We first note the basic premise on appeal: That the judgment is presumed to be correct, and that the burden of establishing its invalidity is upon the party attacking it.[3] Inasmuch as no transcript of what transpired before the trial court on December 19, 1963, has been brought to us, it is to be presumed that the proceeding supports the judgment.[4]

It is perhaps unnecessary to burden this opinion with other of the numerous details and proceedings in this strangely mixed-up lawsuit. It is reminiscent of the characterization: As a lawsuit, it is but a sparrow, yet furnished with a garb of feathers ample enough for a turkey.[5] However, in further support of the conclusion that the trial court did not abuse its discretion, it seems appropriate to observe that the unsoundness of the purported defense was undoubtedly as apparent to him as it is to us. The first evidence of this was in the ludicrous "counterclaim" for $5,000 compensatory and $10,000 punitive "damages" for the simple bringing of a suit on a promissory note, which the trial court properly struck at pretrial as groundless.

The character, or perhaps better stated, lack of character, of the defense is further manifest in the vagaries of defendant's changing positions: First, in declaring

---

2. That for failure to produce records the court may be justified in entering judgment against a party, see Rasbury v. Bainum, 15 Utah 2d 62, 387 P.2d 239.

3. See Burton v. Zion's Cooperative Mercantile Institution, 122 Utah 360, 249 P. 2d 541; Charlton v. Hackett, 11 Utah 2d 389, 360 P.2d 176.

4. "[W]here the evidence was not brought to the Supreme Court the findings of fact [of the trial court] were unassailable * * *." Bennett Leasing Co. v. Ellison, 15 Utah 2d 72, 387 P.2d 246, 247, n. 2 (1963) and the cases cited therein.

5. See statement of Chief Justice Bleckley in Lukens v. Ford, 87 Ga. 541, 542, 13 S.E. 949 (1891).

positively that he had these essential records, and later, in declaring that he did not have them; and in his shifting of grounds in other matters, e. g. that the wage for his son as recorded by the reporter in defendant's deposition was $2.50 per hour; then changed by the defendant to $3.50, and later attempting to claim $5 per hour. A more important aspect of the case is that even in his testimony the defendant could come forward with no actual statement or commitment by the plaintiff that the painting job would discharge the note, but only asserted that this was his own "understanding," which, of course, would not establish any claimed "agreement" as a defense.

Upon the basis of the facts hereinabove discussed, it is not made to appear that the trial court abused his discretion in rendering the judgment.

■ Finally, it is necessary to direct attention to a "transcript of testimony" taken on May 18, 1964, after the appeal had been taken to this court. This transcript was simply brought and left with the clerk of this court. It is contended that this was done pursuant to Rule 75(h), U.R.C.P., which provides in part that, " * * * [i]f anything material is omitted from the record on appeal by error or accident or is misstated therein, * * * the Supreme Court * * * may direct that the omission or misstatement shall be corrected, * * *." No order has been made authorizing this transcript to be made part of the record on appeal. Nor could it properly have been. The appeal is from and is limited to the proceedings in the district court upon which the judgment is based. The rule referred to contemplates that any addition to the record be part of that proceeding, and does not authorize bringing in anything other than that record.[6] It requires but a moment's reflection to realize what a chaotic situation would exist if after a judgment is entered and an appeal taken, the parties could keep on having supplemental proceedings, adducing new evidence, and forwarding the transcripts to the Supreme Court. The illogic and irregularity of attempting to do so is so obvious that further comment as to its impropriety is unnecessary.

The judgment is affirmed. Costs to plaintiff (respondent).

HENRIOD, C. J., and McDONOUGH, CALLISTER, and WADE, JJ., concur.

6. See United States v. Maryland Casualty Co. (CA 5th, 1953), 204 F.2d 912; Dempsey v. Guaranty Trust Co. of New York (CCA 7th, 1942), 131 F.2d 103, cert. denied 318 U.S. 769, 63 S.Ct. 761, 87 L.Ed. 1139; and Moore's Federal Practice, 2d Ed., 1955, Vol. 7, at page 3663.