**Linda LARSEN and the State of Utah by and through Utah State Department of Social Services, Plaintiffs and Respondents,**

v.

**Douglas COLLINA, Defendant and Appellant.**

No. 18328.

Supreme Court of Utah.

June 18, 1984.

Steven L. Hansen, Murray, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Dave Thompson, Salt Lake City, for plaintiffs and respondents.

STEWART, Justice:

On this appeal, we affirm the denial of the defendant's motion pursuant to Utah R.Civ.P. 60(b) to set aside a default judgment in a paternity action against the defendant. We remand, however, for a redetermination of the proper amount of damages.

On December 19, 1979, plaintiffs Linda K. Larsen and the Utah Department of Social Services brought a paternity suit against the defendant, Douglas Collina. The complaint prayed for $4,946 in unpaid child support and $183 per month in con-

tinuing support. The defendant retained counsel and filed his answer April 2, 1980. At that time, the defendant lived in Salt Lake City.

In May, 1980, the defendant moved to Ferron, Utah, but did not inform his attorney, Bradley H. Parker, of the move. Over the next several months, Parker sent at least three letters to the defendant's Salt Lake address, but received no reply. Because of the breakdown in communication, Parker was unable to answer interrogatories the plaintiffs served on the defendant in June.

Hoping that the defendant would eventually contact him, Parker obtained two extensions to answer the interrogatories. The defendant did not contact Parker, and on October 15 he withdrew from the case and sent a copy of the withdrawal notice to the defendant. On August 25, the plaintiffs had moved for a default judgment because of defendant's failure to answer interrogatories. After Parker withdrew, the county attorney's office wrote to the defendant on October 21, 1980, instructing him to obtain new counsel or appear in his own behalf. The county attorney's office received no reply. On December 17, 1980, the trial court entered a default decree, directing the defendant to pay the amounts prayed for in the complaint, namely, $4,946 for past support and $183 per month until the child reaches age nineteen.

In January, 1981, the Department of Social Services garnished the defendant's wages. In February, 1981, the defendant contacted Parker for the first time since April, 1980. On March 30, 1981, after retaining new counsel, the defendant filed a Rule 60(b) motion for relief from the default judgment. At a hearing on the motion, Parker was present to testify on behalf of the plaintiffs. However, instead of taking his testimony, the trial court accepted a proffer of evidence that included a letter from Parker to the Utah State Bar stating that when the defendant finally made contact with Parker's office in February, 1981, he admitted that he had received a copy of the notice of withdrawal of counsel, yet had chosen to take no action. Also,

according to the proffer of evidence, at the time he contacted Parker, the defendant admitted receiving billing statements from Parker from May to October. The defendant did not appear at the hearing.

## I.

The defendant relies on subsections (1) and (7) of Rule 60(b), Utah R.Civ.P., which allow a court to relieve a party from a judgment in case of: "(1) mistake, inadvertence, surprise, or excusable neglect"; and "(7) any other reason justifying relief from the operation of the judgment." Rule 60(b) requires that motions based on the grounds set forth in subsection (1) must be made not more than three months after judgment. Motions made pursuant to subsection (7) need be filed only within a reasonable time.

■ A trial court has discretion in determining whether a movant has shown "mistake, inadvertence, surprise, or excusable neglect," and this Court will reverse the trial court's ruling only when there has been an abuse of discretion. *E.g., Russell v. Martell,* Utah, 681 P.2d 1193 (1984); *Heath v. Mower,* Utah, 597 P.2d 855 (1979); *Airkem Intermountain, Inc. v. Parker,* 30 Utah 2d 65, 513 P.2d 429 (1973). In the instant case, there was no abuse of discretion in the trial court's finding that the defendant was guilty of inexcusable neglect.

■ Furthermore, the motion was not filed until March 30, 1981, more than three months after the default decree was entered. The three-month period allowed for subsection (1) motions may not be circumvented by filing a motion under subsection (7). *Russell v. Martell, supra.*

■ The defendant argues that the evidence did not prove that he received the earlier letters that notified him of the requests for interrogatories and the extensions of time to answer. However, in an affidavit submitted in support of his motion, the defendant did not deny receiving the correspondence, nor did he aver that he was unaware of the consequences of a failure to respond. He contends only that he

was not notified prior to Parker's withdrawal that if he did not answer plaintiffs' interrogatories, a default judgment could be taken against him. On these facts, the trial court did not err in holding that defendant had failed to demonstrate excusable mistake, inadvertence, or neglect.

Finally, the defendant argues that in the interest of fairness the default should be set aside. He points out that the evidence is inconclusive that he is the father of the child, since the blood tests showed only that the defendant could not be excluded as the father. The defendant claims that if Larsen had engaged in sexual intercourse with more than one individual during the time period in dispute, the probability that he was the father would decrease in direct proportion to the number of sexual partners during the critical time. However, the evidence was that Ms. Larsen had a liaison with the defendant only.

 Usually, it is not appropriate on Rule 60(b) motions to examine the merits of the claim decided by the default judgment. *Robinson v. Myers*, Utah, 599 P.2d 513 (1979); *Board of Education v. Cox*, 14 Utah 2d 385, 384 P.2d 806 (1963). However, a judgment in a paternity case may affect the rights and interests of the child, who is almost always unrepresented in a paternity proceeding. The plaintiff's interest in these cases may be more devoted to obtaining support than in establishing the true identity of the father. However that may be in a given case, the court's order officially determines that the defendant is the child's father. Since such a determination could have important consequences for the child in the future, that determination should be made, even in a default proceeding, on the basis of reliable blood tests, if possible, showing that the defendant is the father of the child.

The North Dakota Supreme Court recognized this principle in *Throndset v. J.R.*, N.D., 302 N.W.2d 769 (1981). The Court held that, on a putative father's Rule 60(b) motion for relief from a default paternity judgment, the trial court should have allowed the defendant to demonstrate, as he proposed to do by way of blood tests, that he was not actually the father. The court explained:

> If the judgment required only that Roe [the putative father] make the monetary payments [for child support], we would affirm the trial court's refusal to vacate the judgment. However, we believe that order . . . should be reversed for another reason. The judgment also requires the Registrar of Vital Statistics to prepare an amended birth certificate indicating that Roe is the natural father of Ada [the child]. . . . Our concern is with the effect of such an order on Ada as she matures and becomes an adult. Paternity may be denied by the putative father or a man determined to be the father after judicial proceedings. That denial may well have a more detrimental effect on a child when . . . the court has refused to vacate [a default paternity judgment] upon the request of a man who wishes to have blood tests taken to determine his parenthood and who seemingly questions whether or not he is the actual father of the child . . . .
>
> . . . [I]t is apparent that the plaintiffs were concerned primarily with the immediate support of Ada and perhaps not so much with the effect this determination may have on Ada as she matures into an adult.

*Id.* at 773–74. *Cf. Hampton v. Douglass*, Ind.App., 457 N.E.2d 618 (1983).

 In the instant case, the interests of the child were a matter of concern to the trial court at the hearing on the Rule 60(b) motion. In reaching its decision, the court reviewed a report of HLA tests that were made in April or May, 1980, and that supported the plaintiff's position. Although the tests were not as thorough and comprehensive as they might have been, *see generally Phillips v. Jackson*, Utah, 615 P.2d 1228 (1980), that evidence, along with other evidence, was sufficient to support the ruling denying the motion. We note parenthetically that the fundamental issue of the reliability of HLA tests and the thoroughness with which those tests must be con-

ducted has yet to be judicially determined in this jurisdiction under the standards set out in *Phillips v. Jackson, supra.* Nevertheless, the defendant in effect waived any objection to those tests in this case and therefore is in no position to challenge the evidence.

We do not mean to suggest that default judgments cannot be entered in paternity cases without blood tests when they are not obtainable or that the most compelling evidence of paternity must be adduced when such evidence is impossible or impracticable to obtain. Obviously, the mother's and the state's interest's must also be protected and cannot be defeated by a defendant who is bent on trying to avoid an adverse judgment by refusing to cooperate.

## II.

Rule 55(b)(2), Utah R.Civ.P., provides that where a plaintiff's claim is not for a sum certain, a court may conduct a hearing in order to determine the amount of damages. Pursuant to this rule, we have remanded cases for evidentiary hearings to determine damages where no evidence as to the reasonableness of damages was taken before default was entered. *Russell v. Martell,* Utah, 681 P.2d 1193 (1984); *J.P.W. Enterprises v. Naef,* Utah, 604 P.2d 486 (1979); *Pitts v. Pine Meadow Ranch, Inc.,* Utah, 589 P.2d 767 (1978).

The amount of damages requested here was neither a sum certain nor a sum readily calculable, and the court did not take evidence as to the reasonableness of the amount. The amount of the damages, $4,946 plus $183 per month until the child reaches age nineteen, is sizable. We therefore remand for an evidentiary hearing on damages, at which hearing the defendant is entitled to appear and defend with counsel.

Affirmed in part, reversed in part, and remanded. Costs to respondents.

HALL, C.J., and HOWE and DURHAM, JJ., concur.

OAKS, J., having resigned, does not participate herein.