**Pamela Archer TEECE, Plaintiff and Respondent,**

**v.**

**James Allen TEECE, Defendant and Appellant.**

No. 19308.

Supreme Court of Utah.

Feb. 28, 1986.

Larry A. Kirkham, Salt Lake City, for defendant and appellant.

Kenneth Okazaki, Robert Ryberg & Associates, Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

Defendant appeals from a decree of divorce, contending that the trial court erred in refusing to order a blood test to determine paternity of a minor child born during the marriage, in its distribution of the marital property, and in refusing to impose sanctions for plaintiff's failure to comply with his discovery request.

I

Plaintiff and defendant were married in 1973. In May of 1981, plaintiff gave birth to a child. Soon thereafter, she filed this action for divorce. In his answer to her complaint, defendant denied paternity. Along with a request for blood tests, he submitted an affidavit stating that he did not have access to plaintiff during the time conception would have occurred because he was in Canada. The trial court denied defendant's motion for blood tests, basing its decision on Lord Mansfield's rule. We ac-

knowledged our acceptance of that rule in *Lopes v. Lopes*, 30 Utah 2d 393, 518 P.2d 687 (1974), and left "the proof of [paternity] to come from other sources." Nothing in the rule, which bars *testimony* from either parent that would illegitimize their child, prohibits the introduction of the results of blood or tissue typing tests or of testimony from witnesses other than the putative parents on the issue of paternity. *Hales v. Hales*, Utah, 656 P.2d 423 (1982).

The principle that children born in wedlock are presumed to be legitimate is universally recognized. *Holder v. Holder*, 9 Utah 2d 163, 340 P.2d 761 (1959); *Peters v. Campbell*, 80 Wyo. 492, 345 P.2d 234 (1959); *Pierson v. Pierson*, 124 Wash. 319, 214 P. 159 (1923). This presumption of legitimacy had it origins in English common law. While the presumption was originally rigid and arbitrary, it is now generally held that the presumption of legitimacy is rebuttable. *See* H. Clark, *The Law of Domestic Relations in the United States*, at 172 (1968). However, according to the predominant legal authorities, it remains one of the stronger rebuttable presumptions in the law.

The effect of Lord Mansfield's rule has been substantially eroded by the enactment of U.C.A., 1953, § 78-25-18, which provides unequivocally that "[i]n *any* civil action or in bastardy proceedings in which the parentage of a person is a relevant fact, the court shall order the child and alleged parents to submit to blood tests." (Emphasis added.)

Inasmuch as the Utah legislature has expressly mandated that the courts utilize blood tests to assist in making a determination of paternity, the lower court's denial of defendant's motion was clearly error, and on this ground we must reverse.

## II

The trial court divided equally the parties' equity in their house and lot. However, plaintiff was given possession for so long as she chose to live there, but not beyond her remarriage or the eighteenth birthday of the child. Defendant assails this division, contending that before the equity was divided he should have been reimbursed for his contribution toward the down payment and for funds he later provided to pay for a garage and patio which were added.

■ The down payment of $10,000 was withdrawn from two savings accounts. The parties seem to agree that defendant contributed about $6,500 and plaintiff contributed about $3,500 of that amount. Most of plaintiff's contribution came from a gift of $3,000 which defendant had previously made to her. The source of the funds contributed by defendant was in dispute. Plaintiff testified that defendant's contribution came from his pay checks which she had deposited in one of the savings accounts while the parties lived on her earnings. On the other hand, defendant testified that the source of his contribution was the sale of a business prior to the marriage. On cross-examination, however, defendant admitted that he did not know how much money he had in savings at the time of his marriage. Thus, the trial court was faced with conflicting testimony and chose to believe plaintiff that defendant's contribution to the down payment came from the joint earnings of the parties during their marriage. However, even if we accept as true defendant's testimony as to the source of his $6,500 contribution, the difference in the contributions made by the two parties was not so great as to give rise to any abuse of discretion on the part of the trial court. Mathematical equality in the division of each marital property is not required. *Workman v. Workman*, Utah, 652 P.2d 931 (1982). The overall division need only be equitable. *Fletcher v. Fletcher*, Utah, 615 P.2d 1218, 1222 (1980).

■ As to the additions made to the home, defendant testified that approximately $8,000 of the $13,000 cost came from inheritance from his mother. He contends that he should have been reimbursed for that amount before the equity in the house and lot was divided. Plaintiff offered no evidence on the source of the

funds for the addition. However, payment was made by checks from defendant's own checking account which he set up in May 1977. In that account, he admitted that he commingled inheritance money with his earnings. During this time, the parties were living on plaintiff's earnings, with the exception of the mortgage payments, which were paid from defendant's checking account. In light of the uncertainty of the evidence presented and the lack of accurate records that would have substantiated defendant's claim, we cannot disturb the trial court's refusal to reimburse defendant for the additions prior to splitting the equity.

Neither should defendant be reimbursed for payments made by him on the first and second mortgages from his earnings during the marriage. Again, during this period of time the parties were otherwise living on plaintiff's earnings.

■ Defendant's contention that the court should have ordered an immediate sale of the home, however, merits close consideration. Upon a determination of the paternity issue addressed above, if the Court should find that defendant is not in fact the father of the minor child, an order should be entered requiring the home of the parties to be sold as soon as practicable to allow defendant to now receive his share of the equity. Absent such a finding, the award of possession to plaintiff and the child is affirmed subject to the right of defendant to seek modification of that arrangement pursuant to the continuing jurisdiction of the court vested by U.C.A., 1953, § 30-3-5. In view of the facts that defendant was fifty-one years of age when the child was born, that at the time of the trial he was living in his truck and camper, that his health was somewhat impaired, and that his future income was uncertain, it may be inequitable to tie up his share of the equity, $23,378 (which does not bear interest), for the full eighteen years of minority of the child. He should have and does have the opportunity to seek periodic review of the equity of continuing that arrangement. *See Chandler v. West,* Utah, 610 P.2d 1299 (1980).

We have reviewed the division of the personal property and find it to be within the ambit of discretion reposed in trial judges and affirm that portion of the decree.

III

■ Defendant's final contention is that the trial court abused its discretion by failing to impose sanctions against plaintiff for her failure to comply with his discovery requests. He relies on the court's authority under Rule 37(d), Utah R.Civ.P., to impose sanctions when it determined that his motions to compel were well taken. He moved the court for an order compelling discovery, and at a hearing on March 3, 1983, plaintiff was given ten days to respond or her default would be entered. On March 15, plaintiff's counsel asked that defendant's counsel allow him until March 18 to respond. The court subsequently ordered plaintiff to comply by that date. However, plaintiff's counsel did not deliver the requested information until Monday, March 21, to defendant's attorney.

Rule 37(d) provides:

[T]he court in which the action is pending on motion *may* make such orders in regard to the failure as are just, and among others it *may* take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this Rule. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, *unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust....*

(Emphasis added.)

We have interpreted the language of this rule "as presently worded [to be] permissive, rather than mandatory," and have recognized that it "grants the court discretionary authority to impose the sanctions mentioned. Where the authority to perform a proposed action rests with the discretion of

the court, we must allow considerable latitude in which he may exercise his judgment." *Carman v. Slavens,* Utah, 546 P.2d 601 (1976). *See also Tucker Realty, Inc. v. Nunley,* 16 Utah 2d 97, 396 P.2d 410 (1964).

The record substantiates the difficulty both parties experienced in locating accurate records to support their claims. Inasmuch as inadequate records were kept and in some instances were actually missing, discovery problems existed. Under these circumstances, it was not unreasonable for the court to find that plaintiff's delay was "justified." We find no abuse of discretion in refusing sanctions.

Reversed and remanded for further proceedings consistent with this opinion. No costs awarded.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.