William W. MORTON, Plaintiff and Respondent,

v.

CONTINENTAL BAKING COMPANY, a Delaware corporation, Defendant and Petitioner.

No. 950485.

Supreme Court of Utah.

April 8, 1997.

Rehearing Denied June 10, 1997.

Denver C. Snuffer, Jr., Sandy, for plaintiff.

Terry M. Plant, Bradley R. Helsten, Salt Lake City, for defendant.

RUSSON, Justice:

## I. INTRODUCTION

We granted Continental Baking Company's ("Continental") petition for a writ of certiorari to review the Utah Court of Appeals' reversal of the trial court's dismissal of plaintiff William W. Morton's complaint for failure to comply with the trial court's discovery order. We reverse.

## II. BACKGROUND

Morton filed a civil suit against Continental on July 15, 1991, to recover damages for injuries he allegedly sustained as a consequence of an auto accident involving Morton and a vehicle owned by Continental and driven by one of Continental's employees.

The original trial date was December 7, 1992, but on September 9, 1992, Morton moved for a continuance. In the motion, Morton's counsel asserted that Morton was scheduled for knee surgery on December 28, 1992, and that Morton could not properly calculate a damage award until after the surgery and rehabilitation. The court granted the motion and rescheduled the trial for June 1, 1993. On April 15, 1993, Morton's counsel sought another continuance, stating that counsel was too busy and needed more time to schedule depositions of expert witnesses, as well as conduct other discovery.

The court again rescheduled the trial, this time for January 11, 1994.

On January 10, 1994, one day before trial was to begin, Morton's counsel initiated a telephone conference with the trial judge and counsel for Continental. In this conference, Morton's counsel stated that one of his expert witnesses was going to present opinions, evidence, and theories at trial that were entirely new and different from those which Morton had previously stated would be presented. As a result of this announcement, the court again rescheduled the trial to allow Continental time to conduct additional discovery in light of Morton's new theories. The new trial date was set for August 11, 1994.

A few days following the telephone conference, on January 14, 1994, Continental served on Morton interrogatories and requests for production of documents. Morton failed to provide responses to the discovery requests within the thirty days prescribed by rule 33(a) of the Utah Rules of Civil Procedure. On February 25, 1994, Continental sent a letter to Morton inquiring about the status of the discovery responses. In the letter, Continental stated that if Morton did not provide the discovery responses by March 10, 1994, Continental would file a motion to compel.

Morton did not provide the discovery responses by March 10, and on March 18, 1994, Continental filed a motion to compel, a copy of which was served on Morton. In the motion, Continental requested that the trial court order Morton to respond within ten days or face dismissal of his case. Morton failed to respond to this motion.

On March 31, 1994, Continental filed a notice to submit for decision its motion to compel, a copy of which was sent to Morton. Morton did not respond. The court, on April 12, 1994, directed Continental to prepare an order requiring Morton to respond to Continental's discovery requests within ten days

or face "the dismissal of all of Plaintiff's claims for relief." In the order, the court made it clear that Morton had "until 5:00 o'clock p.m. on the tenth day" from the signing of the order to comply.[1] This order was mailed to Morton on April 12.

Morton did not respond in any way to either the notice to submit or the court's order. The discovery responses were not received by the Friday, April 22, deadline. On Monday, April 25, 1996, Continental prepared a proposed order to dismiss pursuant to the April 12 order, a copy of which was hand-delivered to Morton. On that same day, Morton responded for the first time to the discovery requests by faxing responses to Continental. The court signed the order to dismiss on April 28, 1994. Morton claims that he knew nothing of the court's activities between the March 18 motion to compel and a notice of signing of judgment that he received on May 9, 1994.

Following the dismissal, Morton filed several motions with the trial court aimed at overturning the dismissal. As part of Morton's efforts, he filed an affidavit dated May 11, 1994, in which he admitted that he had received both the discovery requests and the motion to compel. The trial court rejected Morton's motions. Morton then appealed, and we poured the case to the court of appeals.

On September 14, 1995, the court of appeals issued a memorandum decision wherein it stated that it had "reviewed each of the issues raised by [Morton] regarding excuses for noncompliance with the trial court's discovery order, or reasons for extension of the court imposed deadline, and [had] found them to be without merit." However, while the court of appeals agreed "that [Morton's] conduct merited sanction," the court indicated that its review of Utah case law suggested that the sanction of dismissal under rule 37, while within the discretion of the trial court, was a sanction which was only applied "in

---

1. The order stated:
 Plaintiff shall have 10 days from the signing of this Order, until 5:00 o'clock p.m. on the tenth day [April 22], to deliver to [Continental] full and complete responses to the interrogatories and requests for production of documents in question ... and upon failure to do so, will suffer sanctions in accordance with Rule 37 of the Utah Rules of Civil Procedure, which will be the dismissal of all of Plaintiff's claims for relief.

cases involving more egregious neglect and misconduct" than was displayed by Morton. The court of appeals stated, "We are constrained ... to follow prior decisions approving dismissal under Utah Rule of Civil Procedure 37 only under circumstances much more egregious than those in evidence here." Thus, the court of appeals held that the trial court had abused its discretion and reversed and remanded.

Continental argues on certiorari that the court of appeals erred in its decision to reverse the trial court. Continental argues that the trial court is given broad discretion in imposing sanctions and such decisions are reviewed only for abuse of discretion. Continental argues that rule 37 requires only that Morton's actions be willful before a trial court can impose sanctions and that there was ample evidence in the record to support the trial court's finding that Morton's noncompliance was indeed willful. By requiring Morton's behavior to be more egregious, Continental argues, the court of appeals ignored the "willful" standard and did not afford the trial court the proper amount of deference. Further, Continental claims that the court of appeals erred in not requiring Morton to sustain the burden of showing that the trial court's decision was a clear abuse of discretion.

Morton responds that the court of appeals correctly held that the trial court's dismissal of his claim was an abuse of discretion. Morton argues that any delay in complying with the court's order should be excused because, for various reasons, he never received the orders and, after all, the discovery responses faxed to Continental on April 25 were, at most, only "one business day late."

## III. ANALYSIS

 Rule 37(b)(2)(C) of the Utah Rules of Civil Procedure states, in relevant part:

(2) If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

...;

(C) an order striking out pleadings or parts thereof, staying further proceedings until the order is obeyed, *dismissing the action or proceeding or any part thereof,* or rendering a judgment by default against the disobedient party[.]

(Emphasis added.) Before a trial court can impose discovery sanctions under rule 37, the court must find on the part of the noncomplying party willfulness, bad faith, or fault, *Utah Dep't of Transp. v. Osguthorpe,* 892 P.2d 4, 6 (Utah 1995); *First Fed. Sav. & Loan Ass'n v. Schamanek,* 684 P.2d 1257, 1266 (Utah 1984); *accord Amica Mut. Ins. Co. v. Schettler,* 768 P.2d 950, 961 (Utah.Ct. App.1989), or "persistent dilatory tactics frustrating the judicial process," *W.W. & W.B. Gardner, Inc. v. Park West Village, Inc.,* 568 P.2d 734, 738 (Utah 1977); *see also Osguthorpe,* 892 P.2d at 6, n. 2. Once the trial court determines that sanctions are appropriate, "[t]he choice of an appropriate discovery sanction is primarily the responsibility of the trial judge." *Schamanek,* 684 P.2d at 1266.

 Even though dismissal of a noncomplying party's action is one of the "most severe of the potential sanctions that can be imposed," *Osguthorpe,* 892 P.2d at 7, it is clear from the language of rule 37 that it is within a trial court's discretion to impose such a sanction. " 'Because trial courts must deal first hand with the parties and the discovery process, they are given broad discretion regarding the imposition of discovery sanctions.' " *Osguthorpe,* 892 P.2d at 6 (quoting *Darrington v. Wade,* 812 P.2d 452, 457 (Utah.Ct.App.1991)). Thus we have long held that we will not interfere unless " 'abuse of that discretion [is] *clearly* shown.' " *Id.* at 8 (quoting *Katz v. Pierce,* 732 P.2d 92, 93 (Utah 1986)); *see also Tucker Realty, Inc. v. Nunley,* 396 P.2d 410, 412, 16 Utah 2d 97, 100 (1964) ("Unless it is shown that [the trial court's] action is without support in the record, or is a plain abuse of discretion, it should not be disturbed."). We will find that a trial court has abused its discretion in choosing which sanction to impose only if there is either "an erroneous conclusion of law or ... no evidentiary basis for the trial court's ruling." *Askew v. Hardman,* 918 P.2d 469, 472

(Utah 1996); *see also Schamanek*, 684 P.2d at 1266. In this case, Morton has not clearly shown that the trial court abused its discretion in dismissing his case.

■ There is ample evidence in this case to support the trial court's ruling. This case had been set for trial four different times. The trial court generously granted continuances, first for Morton's knee surgery and then to allow Morton more time to depose witnesses. Finally, two and a half years after the commencement of this case, the trial court allowed a continuance as a result of Morton's surprise announcement that one of his experts would be presenting an entirely new theory at trial the next day. The trial court showed tremendous patience in allowing so many delays to interrupt this case.

Yet, even after this third continuance to accommodate him, Morton did nothing to show the court that he was interested in diligently prosecuting his case. Three months passed, and Morton made no response whatever to Continental's discovery requests, Continental's letter of inquiry, or the various motions and orders filed with the court and served on Morton. Morton had plenty of warning that his case was in trouble, considering he admitted to having received the motion to compel which specifically requested a court order requiring compliance and threatening dismissal of Morton's case.

■ A trial judge is given a great deal of latitude in determining the most fair and efficient manner to conduct court business. The trial judge is in the best position to evaluate the status of his cases, as well as the attitudes, motives, and credibility of the parties. This case is no different. The trial judge had been involved in this case for three years. Over that time, he met with the attorneys for both sides numerous times. He thoroughly reviewed all documents filed in connection with the case and ruled on numerous motions. He heard and considered all of Morton's excuses for not complying with the court's order and concluded that he had "not been offered any satisfactory explanation by Morton's counsel" for the noncompliance.

Morton complained that the dismissal would be a hardship, considering all of the time and cost invested in the case. We think the trial court's response is perceptive:

> With all this at stake, why would counsel fail to answer the interrogatories or at least provide partial answers to opposing counsel when they were due? Why would counsel, knowing that a motion to compel was filed, not respond to the Court in any way? Why would he not then provide the answers he had? Why would he not seek an extension of time from the Court if he were having difficulty obtaining the information? Why, if he were ready to present at least part of the information at trial on January 11, 1994, could he not produce it to counsel within the time limits of the rules? ... Any mistakes, inadvertence and neglect which may have occurred at the office of Plaintiff's counsel are not an excuse for the manner in which Plaintiff's counsel has handled this matter.

Morton argues for relief due to his investment of time and money in this case. But there are two parties to this action, and both are entitled to fair treatment. Continental did not seek this litigation. Its investment of time and resources toward the resolution of this case was not voluntary. And it was Morton, not Continental, who was responsible for all three of the delays in this case—delays which increased the length of this matter from six months to three years. There comes a time when a trial judge is justified in saying that enough is enough. We cannot say under these facts that the trial judge abused his discretion in dismissing the complaint.

■ Morton's claims that he did not receive the court's order to respond to Continental's discovery requests are not compelling. Morton admitted that he received the discovery requests as well as the motion to compel. It is disingenuous for Morton to now argue that he was not aware of his obligation to respond. Morton's counsel

must have understood the significance of a motion to compel. He should have been diligent enough to seek another extension from the court or, at the very least, to try to contact Continental in some way. However, neither Morton nor his counsel did anything until it was too late. All of the motions and orders filed in relation to Continental's discovery requests were properly served on Morton. Although "he denies receiving some of them, he was given ample notice of the proceedings against him and his obligations under the law." *Osguthorpe*, 892 P.2d at 8.

The court of appeals, in reversing the trial court, cited several cases which it felt compelled the conclusion that more egregious behavior was required on the part of Morton to sustain the trial court's discretionary ruling under rule 37. However, in so holding, the court of appeals, without even requiring Morton to clearly show an abuse of discretion, *see Osguthorpe*, 892 P.2d at 8; *Katz*, 732 P.2d at 93, undertook to rewrite rule 37 and ignored prior decisions of this court.

We have never expressed any rule which delineates a specific level of behavior which must be met before rule 37 sanctions are warranted. As stated previously, a party's conduct merits sanctions under rule 37 if any of the following circumstances are found: (1) the party's behavior was willful; (2) the party has acted in bad faith; (3) the court can attribute some fault to the party; or (4) the party has engaged in persistent dilatory tactics tending to frustrate the judicial process. *See Osguthorpe*, 892 P.2d at 6; *Schamanek*, 684 P.2d at 1266.

■ To find that a party's behavior has been willful, there need only be " 'any intentional failure as distinguished from involuntary noncompliance.' " *Amica Mut. Ins. Co.*, 768 P.2d at 961 (quoting *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 872–73 (10th Cir.1987)); *see also Osguthorpe*, 892 P.2d at 8. Morton presented to the trial court numerous excuses for failing to comply with the court's order in numerous motions following the dismissal of his case. The trial court was not persuaded. Morton then presented the same arguments to the court of appeals,

which found them to be "without merit." Morton presents the same excuses to this court. However, Morton has not attacked the court of appeals' determination that such excuses were "without merit." On the other hand, because Morton knew that a motion to compel had been filed, which threatened dismissal of his case, and because all of the motions and orders were properly served on Morton, we think that there is ample evidence to support the view that Morton's failure to supply the discovery requests in a timely manner was *at least* willful.

The court of appeals incorrectly interpreted the case law relating to this issue. While it can be argued that the behavior sanctioned in the cases cited by the court of appeals was more egregious than Morton's behavior, *see Osguthorpe*, 892 P.2d at 8–9; *Larsen v. Collins*, 684 P.2d 52, 54–55 (Utah 1984); *Amica Mut. Ins. Co.*, 768 P.2d at 962; *accord Charlie Brown Constr. Co. v. Leisure Sports, Inc.*, 740 P.2d 1368, 1370–71 (Utah. Ct.App.1987), we have affirmed a trial court's dismissal as a sanction for behavior clearly less egregious than that apparently required by the court of appeals. *See, e.g., W.W. & W.B. Gardner*, 568 P.2d at 736–38 (affirming default judgment entered against defendant because defendant's answers to plaintiff's interrogatories and requests for production of documents were late, even though they were filed before hearing on summary judgment motion); *Tucker Realty*, 396 P.2d at 412, 16 Utah 2d at 99–101 (affirming default judgment where plaintiff responded to court order to compel production of documents by only producing one of many required documents); *accord Schoney v. Memorial Estates, Inc.*, 790 P.2d 584, 586–87 (Utah.Ct.App.1990) (affirming default judgment where plaintiffs failed to timely respond to interrogatories after court granted several continuances on plaintiffs' behalf, and plaintiffs had been "somewhat uneven in discharging their burden of prosecuting the case in a timely fashion"). In any event, all of these cases clearly stand for the proposition that trial courts are granted a great deal of deference in dismissing a case as a discovery sanction.

## IV. CONCLUSION

On the basis of the foregoing, we reverse the court of appeals and affirm the trial court's dismissal of Morton's claims under rule 37(b)(2)(C) of the Utah Rules of Civil Procedure.

ZIMMERMAN, C.J., and HOWE, J., concur.

STEWART, Associate Chief Justice, dissenting:

I dissent. I think it utterly indefensible for this Court to hold that a client whose case is ready for trial can be thrown out of court because his attorney was one day late in complying with a discovery deadline. Punishing a hapless, innocent client for his attorney's "crime" of being a day late in answering interrogatories will, I believe, evoke a sense of utter disillusionment with our sense of judicial fairness and avoidance of capriciousness. If punishment is appropriate at all, the Court should punish the attorney rather than deprive the client of his opportunity to present his case. The rules of procedure provide a whole array of sanctions that can be appropriately employed against wayward counsel. To argue that the client can have his right to an adjudication of his claim in this case vindicated by a malpractice action against his attorney is pure sophistry and adds insult to injury. I would affirm the Court of Appeals.

## I. FACTS

The majority opinion does not provide a complete factual picture of the record. On April 29, 1989, Morton was involved in a collision with a vehicle that was owned and operated by Continental Baking Company. Continental's driver was killed, and Morton suffered severe injuries. Morton filed suit against Continental, asserting that its driver had negligently caused the accident. The trial was originally set to begin on December 7, 1992. The trial date was then changed three times. The majority opinion asserts that Morton was responsible for all three of the delays in this case, but it does not adequately lay out the context in which those delays occurred. Morton was scheduled for knee-replacement surgery on December 28, 1992. Morton's counsel requested the first continuation to accommodate this surgery. Morton's counsel noted that because the surgery was a consequence of the accident, fixing the amount of damages would be easier if the trial was continued until after the date of the surgery. Notably, Continental did not object to the motion, and the trial court rescheduled the trial to begin on June 1, 1993.

The parties then entered into a stipulated agreement to a further continuation, and the trial was reset to begin January 11, 1994. Although the stipulation stated that Morton's attorney had requested a continuation due to a busy schedule, there was a formal motion by *both* parties for this particular continuance. Discovery was conducted without any substantial controversy or difficulty. In short, as far as the record demonstrates, both continuations were ordinary occurrences in the trial process.

Shortly before the trial was to begin, Morton's counsel apparently announced that Dr. Philip Hoyt, one of Morton's expert witnesses, had noticed skid marks in photographs. Apparently, Morton believed those marks in some way had been previously overlooked or misinterpreted. *Continental* requested an opportunity to prepare for *the alleged new theory* that Hoyt would present with respect to his interpretation of the skid marks. *Thus, the third and final continuation was not granted at the request of Morton but at the request of Continental. Though the majority characterizes this episode as being entirely the fault of Morton, that characterization is once again simply speculation based upon an extremely sparse record which does not even mention the specifics of the "new evidence" that was to be presented or how much additional time Continental genuinely required to prepare for it.* All that can be derived directly, or indirectly, from the record is that the accident occurred on a major highway, that there were skid marks on the portion of highway where the accident occurred, and that prior to Hoyt's examination of some photographs, certain witnesses or parties had apparently believed one set of skid marks was unrelated to the

accident. Morton, on the other hand, became convinced shortly before trial that those skid marks were caused by a trailer attached to Morton's truck and that the marks demonstrated Morton had remained within his lane of travel immediately prior to the collision.

The trial was rescheduled to begin August 11, 1994. *The trial court did not enter any order respecting the reopening of discovery,* and there is no indication that either party attempted to clarify that matter. Nor is there any indication that further discovery was necessary. Because the new theory simply related to a new interpretation to be applied to skid marks (of which both parties were aware or should have been aware), there was no reason for Continental to engage in broad discovery on any questions other than the specifics of testimony related directly to that theory. Nevertheless, on January 14, 1994, Continental propounded upon Morton extensive discovery demands requiring Morton to respond within thirty days.

The discovery requests consisted of interrogatories and document requests. A few of the interrogatories requested information related to the new theory and any additional information that two of Morton's other expert witnesses intended to offer. *But other requests went well beyond the new theory and any testimony that would be affected by that theory, requiring detailed information about virtually every person who had been involved with the investigation of, or who was a witness to, the accident.* For example, interrogatory number one stated:

> Identify each and every person known to the plaintiff or his representative who was at the accident scene in question on December 29, 1989, from an hour before the accident in question up to and including a week after the accident in question. This

is meant to include all persons at the accident when it occurred, shortly thereafter, and all persons known by the plaintiff to have visited the accident scene during the 7 days after the accident.

Other interrogatories requested detailed statements as to the reasons each of these persons was at the scene, the testimony plaintiff planned to elicit from them, and the means by which plaintiff became aware of the person's presence at the scene of the accident. There was no reason for Continental to propound these particular requests at this late date. *To the extent the information was relevant and discoverable, it could have been and should have been obtained much earlier.* Aside from the questions related directly to Morton's new theory or any other new evidence, it appears from the record that the intent of most of the interrogatories was to burden or harass Morton, perhaps in retaliation for presenting his new theory at such a late date.[1]

Continental's counsel asserts that on February 25, he sent a letter to Morton's counsel demanding an immediate response to the discovery requests and threatening to file a motion to compel if those responses were not forthcoming.[2] On March 16, Continental moved to compel.[3] On April 12, 1994, the trial court signed an order to compel, requiring Morton to respond to Continental's discovery requests within ten days. *Neither the trial court nor Continental made any attempt to directly contact Morton's counsel, and no hearing was ever scheduled or noticed.* The order to compel was issued without notice or a hearing. The court stated inexplicably that Morton's failure to comply would result in the sanction of "dismissal of all of Plaintiff's claims for relief." Continental's motion to dismiss and a supporting memorandum and affidavit were filed on April 28, 1994,[4] and the trial court, apparent-

---

1. This point is made not in an attempt to absolve Morton's counsel of any responsibility, but rather to counterbalance the majority's characterization of Morton as the only party who had done anything of a questionable nature.

2. A copy of this letter was submitted as an appendage to Continental's motion to compel but apparently was not filed or lodged at the time it was written.

3. Morton's counsel concedes that he was aware of the motion but asserts that he was never made aware of the outcome of that motion.

4. Continental's counsel signed and dated these documents on April 25.

ly pursuant to Rule 37, Utah Rules of Civil Procedure, entered an order dated the same day granting the motion and dismissing Morton's claims with prejudice. The ex parte nature of the court's and Continental's conduct continued with the preparation and entry of the order without any communication to Morton's counsel. The trial court simply received the motion for dismissal and immediately directed Continental's attorney to prepare the order in accordance with its instructions. A copy of the order was mailed to Morton's counsel on the same day. Morton's counsel has steadfastly maintained that he never received the notice of the order and was unaware of its entry or the deadline for responding to it.

Morton's counsel failed to respond to the discovery requests by Friday, April 22, 1994, the deadline set by the court, but on Monday, April 25, Morton's counsel sent, and Continental acknowledges that it received, partial responses to the discovery requests, one business day late. Apparently, the trial court was never notified of Morton's April 25 responses prior to the order of dismissal. Morton's counsel did fail to respond to the few questions that dealt directly with new evidence or new theories. Concededly, Morton's counsel was at fault for being one day late with the interrogatory answers and for their not being complete. He should have attempted to contact the court and opposing counsel with respect to any difficulties and delays he was experiencing in responding to the discovery requests. Nevertheless, the question is not whether Morton's counsel ought to be sanctioned but whether the sanction imposed was so extreme in relation to the infraction as to constitute an abuse of discretion, and whether plaintiff himself should be sanctioned. After extensive attempts by Morton's counsel to set aside or otherwise obtain relief from the effects of that judgment—all of which were ultimately denied by the trial court—Morton appealed.

By unpublished disposition, the Court of Appeals reversed. *Morton v. Continental Baking Co.,* 913 P.2d 749, No. 940747–CA, slip op. at 2–3 (Utah Ct.App. Sept. 14, 1995) ["*Morton I* "]. The Court stated that "appellant's conduct merited sanction," *id.* at 2, but it also stated that "dismissal 'is an unusually harsh sanction that should be meted out with caution,' " *id.* at 1 (quoting *Darrington v. Wade,* 812 P.2d 452, 456 (Utah.Ct.App.1991)), and concluded that the trial court's imposition of the penalty of dismissal was an abuse of discretion. *Id.* at 2.

## II. DISCUSSION

Although trial courts possess discretion in imposing appropriate penalties for violation of discovery orders, *Utah Dep't of Transp. v. Osguthorpe,* 892 P.2d 4, 6 (Utah 1995), that discretion is not without limits. *Hathcock v. Navistar Int'l Transp. Corp.,* 53 F.3d 36, 40 (4th Cir.1995) (citing *Wilson v. Volkswagen of America, Inc.,* 561 F.2d 494, 503 (4th Cir.1977)); *see also Carman v. Slavens,* 546 P.2d 601, 603 (Utah 1976); *Westinghouse Elec. Supply Co. v. Paul Larsen Contractor, Inc.,* 544 P.2d 876 (Utah 1975); *Velazquez–Rivera v. Sea–Land Serv., Inc.,* 920 F.2d 1072, 1075–76 (1st Cir.1990); *Marshall v. Segona,* 621 F.2d 763, 766–67 (5th Cir.1980); *Griffin v. Aluminum Co. of Am.,* 564 F.2d 1171, 1172 (5th Cir.1977). As we noted in *Westinghouse,* a case where the trial court dismissed the plaintiff's causes of action for failure to prosecute, and primarily for failures to respond to discovery requests:

> It is not to be doubted that ... the trial court should have a reasonable latitude of discretion in dismissing for failure to prosecute if a party fails to move forward according to the rules and the directions of the court, without justifiable excuse. But that prerogative falls short of unreasonable and arbitrary action which will result in injustice.

544 P.2d at 878–79 (footnotes omitted); *see also Carman,* 546 P.2d at 603; 8A Charles Alan Wright Arthur R. Miller, Richard L. Marcus, *Federal Practice* § 2284, at 612.

With respect to this discretion, Wright & Miller note:

> Rule 37 is flexible. The court is directed to make such orders "as are just," and is not limited ... to a stereotyped response. The sanctions enumerated in the rule are not exclusive and arbitrary but flexible, selective, and plural. The district court may, *within reason,* use as many and as

varied sanctions as are necessary to hold the scales of justice even.

Wright & Miller, *Federal Practice* § 2284, at 612–13 (emphasis added) (footnotes omitted).

One explicit limitation on a trial court's discretion is that a sanction of dismissal may not be imposed in the absence of " 'willfulness, bad faith, or fault.' " *Osguthorpe,* 892 P.2d at 6 (quoting *First Fed. Sav. & Loan Ass'n v. Schamanek,* 684 P.2d, 1257, 1266 (Utah 1984)). "Willfulness" requires a showing that the failure to comply was intentional, as distinguished from negligent or careless noncompliance. *Id.* at 8.

The degree of discretion accorded trial courts varies in proportion to the severity of the sanction imposed. It follows that a trial court's range of discretion is more narrow when it imposes the ultimate sanction of dismissal than when it imposes less severe sanctions. *Id.* Appellate courts must therefore examine a dismissal or entry of a default judgment with much greater care and scrutiny than a lesser sanction. The majority opinion ignores this established principle. Although trial courts are afforded due deference in their choice of sanctions, an appellate court cannot simply "rubber-stamp the decisions of the [lower] court." *Velazquez–Rivera,* 920 F.2d at 1075; *see also Wilson,* 561 F.2d at 506.

Indeed, constitutional due process rights may be violated if a court refuses to hear the merits of the case where there has been a relatively trivial infraction of procedural rules.[5] *See Malautea v. Suzuki Motor Co.,* 987 F.2d 1536, 1542–43 (11th Cir.1993). Thus, "[d]ismissal is generally imposed only for *egregious misconduct,* such as *repeated* failure to appear for deposition." *Regional Refuse Sys., Inc. v. Inland Reclamation Co.,* 842 F.2d 150, 155 (6th Cir.1988) (first emphasis added); *see also Velazquez–Rivera,* 920 F.2d at 1077; *Silas v. Sears, Roebuck & Co.,* 586 F.2d 382, 385 (5th Cir.1978). Dismissal is "the most extreme sanction provided for in the rule, and the Supreme Court has emphasized the necessity for cautious use of the rule.... [I]t should be exercised only in

exceptional circumstances." *In re Liquid Carbonic Truck Drivers,* 580 F.2d 819, 822 (5th Cir.1978); *see also Mutual Fed. Sav. & Loan Ass'n v. Richards & Assocs.,* 872 F.2d 88, 92 (4th Cir.1989); *Donnelly v. Johns-Manville Sales Corp.,* 677 F.2d 339, 342 (3d Cir.1982); *Wilson,* 561 F.2d at 504; Wright & Miller, *Federal Practice* § 2284, at 623.

The overriding purpose of modern rules of procedure is to assure that disputes are decided on the merits whenever possible. Appellate courts have repeatedly stressed that trial courts should seek to impose penalties less severe than the dismissal that Rule 37 makes available. *Hathcock v. Navistar Int'l Transp. Corp.,* 53 F.3d 36, 41 (4th Cir.1995); *Brooks v. Hilton Casinos, Inc.,* 959 F.2d 757, 768 (9th Cir.1992); *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 75 (7th Cir.1992); *Velazquez–Rivera v. Sea–Land Serv., Inc.,* 920 F.2d 1072, 1076 (1st Cir.1990); *Meade v. Grubbs,* 841 F.2d 1512, 1520 & n. 7 (10th Cir.1988); *Patterson v. Township of Grand Blanc,* 760 F.2d 686, 689 (6th Cir.1985); *Marshall v. Segona,* 621 F.2d 763, 766–68 (5th Cir.1980).

Indeed, the general rule is that extreme sanctions "should be employed only if the district court has determined that it could not fashion an 'equally effective but less drastic remedy.' " *Velazquez–Rivera,* 920 F.2d at 1076 (quoting *United States v. Pole No. 3172, Hopkinton,* 852 F.2d 636, 642 (1st Cir.1988)). Thus, "[t]he district court abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of less drastic sanctions." *United States v. National Med. Enters., Inc.,* 792 F.2d 906, 912 (9th Cir. 1986); *see also Malautea,* 987 F.2d at 1542; *Navarro v. Cohan,* 856 F.2d 141, 142 (11th Cir.1988); *Donnelly,* 677 F.2d at 342; *Marshall,* 621 F.2d at 767–68.

It is, of course, essential to distinguish between the blameworthiness of the client and that of the attorney for a failure to comply with court orders. *Flaksa v. Little River Marine Constr. Co.,* 389 F.2d 885, 888–89 (5th Cir.1968). This is especially critical

---

**5.** "[T]here are constitutional limitations, as yet somewhat indistinct, on the sanctions that can be imposed." Wright & Miller, *Federal Practice*

§ 2284, at 613; *see also Osguthorpe,* 892 P.2d at 7–8 (treating constitutional implications of dismissal).

when the sanction is dismissal, the effect of which falls disproportionately, if not exclusively, on the client. If the client did not contribute to the violation and if opposing parties do not suffer genuine and severe prejudice as a result of the attorney's violation, dismissing a client's case makes rank mockery of the requirement that sanctions be "just." In short, the rule is that " '[d]ismissal is generally inappropriate and lesser sanctions are favored where neglect is plainly attributable to an attorney rather than to his blameless client.' " *Marshall*, 621 F.2d at 768 (quoting *Silas*, 586 F.2d at 385); *see also Navarro*, 856 F.2d at 141–42; *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 953 (4th Cir.1987); *Carter v. Albert Einstein Med. Ctr.*, 804 F.2d 805, 807–08 (3d Cir.1986); *Patterson*, 760 F.2d at 688–89; *Titus v. Mercedes Benz of N. Am.*, 695 F.2d 746, 749 n. 6 (3d Cir.1982); *Carter v. City of Memphis, Tenn.*, 636 F.2d 159, 161 (6th Cir.1980).

When a case is dismissed or a default judgment entered for an attorney's misconduct, the only remedy left to a client is an action for malpractice. But that is a totally inadequate alternative when other reasonable sanctions against an attorney are available. *See Carter v. Albert Einstein Med. Ctr.*, 804 F.2d 805 (3d Cir.1986). Making a malpractice action the only option for a party whose attorney has erred punishes the client for a crime he did not commit, burdens the courts with unnecessary lawsuits, and leaves a wrongdoer free of all sanctions if the disillusioned and disgusted client can tolerate no more such "justice" in our court system. If a sledgehammer is to be used to kill an ant, at least the right ant ought to be smashed.

The result the majority reaches in this case is inconsistent with *Langeland v. Monarch Motors, Inc.*, 307 Utah Adv. Rep. 3, —— P.2d ——, 1996 WL 74559 (Utah 1996), one of our recent cases. The defendant in *Langeland* failed to respond properly to requests for admission, and the requests were deemed admitted by operation of Utah Rule of Civil Procedure 36. 307 Utah Adv. Rep. at 3, —— P.2d at ——. After some ten months had passed, the defendant's counsel was notified of the failure and belated answers were submitted, but no motion to withdraw or amend was made until nearly fourteen months after the requests had been made—and over a year after the matters had been automatically deemed admitted by operation of Rule 36. The trial court granted the defendant's motion, allowing the case to go forward on the merits. Despite the limited discretion standard we adopted in that case, a majority of the members of this court upheld the trial court's decision. *Id.* at 6–9, at —— – —— (Durham, J., joined by Stewart, A.C.J.); *id.* at 9, at —— (Zimmerman, C.J., concurring in the result).

The Court of Appeals in this case correctly noted that Utah cases upholding a sanction of dismissal involved far more flagrant violations than occurred here. *Cf. Osguthorpe*, 892 P.2d at 7–8; *Schamanek*, 684 P.2d at 1261; *Larsen v. Collina*, 684 P.2d 52, 54 (Utah 1984); *W.W. & W.B. Gardner, Inc. v. Park W. Village Inc.*, 568 P.2d 734, 736 (Utah 1977); *Tucker Realty, Inc. v. Nunley*, 16 Utah 2d 97, 98–101, 396 P.2d 410, 411–13 (1964); *see also National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 640–41, 96 S.Ct. 2778, 2779–80, 49 L.Ed.2d 747 (1976) (per curiam).

The majority cites *W.W. & W.B. Gardner* and *Tucker Realty* and asserts that those cases somehow support its argument. Both of those cases, however, clearly involved circumstances which merited severe sanctions. In *Tucker Realty*, the defendant defaulted, the default was set aside, and the defendant then persistently, repeatedly, and intentionally failed to respond to discovery. 396 P.2d at 411–12. The defendant's evasiveness made it obvious that he was not merely negligent but was attempting to conceal information that would be harmful to his defense and his defendant's counterclaim. *Id.* at 412–13. This Court ruled that defendant's counterclaim was patently frivolous and that he had changed his story on multiple occasions, offering inconsistent excuses for his failure to respond appropriately. *Id.*

In *W.W. & W.B. Gardner*, the defendant was served with at least four separate discovery requests, three of which were served at least twice. 568 P.2d at 736. The defendant responded to none of them, and the plaintiff filed a motion for default judgment. *Id.* at

738. This Court characterized the defendant's conduct as "persistent dilatory tactics." *Id.* at 736. Although the defendant responded to some of the discovery requests subsequent to the filing of that motion (ten months after the due date for the original discovery requests), requests for production of documents remained unsatisfied. *Id.* The defendant then failed to appear at the hearing on the motion for default judgment. The trial court made an affirmative finding that the defendant's delay had prejudiced the plaintiff's prosecution of the case and ruled, *on the merits,* that the plaintiff was entitled to summary judgment. *Id.*

The Court of Appeals ruled that the sanction of dismissal of Morton's case for the violation committed by Morton's *counsel* was wholly out of proportion to his conduct, to say nothing at all of Morton's own innocence. *Morton I,* No. 940747–CA, slip op. at 3. I agree. The trial court, and now this Court, in my view, ignored the requirement that the sanction be "just" and not arbitrary or capricious, especially in view of the fact that the lawsuit had been at issue for many months and was on the verge of going to trial when the dismissal was entered, and there is no showing whatsoever that Continental was prejudiced by the minor delay that Morton caused. Indeed, Continental itself, by its sweeping demands for discovery on issues unrelated to Morton's "new theory" bore substantial responsibility for the delay. It is indeed hard to find a discovery order in our published cases as harsh, unreasonable, and unjust as the one in this case. A one-day-late drop-dead rule will certainly enhance a trial judge's authority, but the cost to justice and fairness is exorbitant.

I would affirm the Court of Appeals.

DURHAM, J., concurs.

